**In the Matter of the Petition of TURN-ERS CROSSROAD DEVELOPMENT CO. for an Order Directing Deletion of a Restriction.**

Nos. 49029, 49083.

Supreme Court of Minnesota.

March 16, 1979.

Maslon, Kaplan, Edelman, Borman, Brand & McNulty, William Z. Pentelovitch and Harvey F. Kaplan, Minneapolis, for appellant.

Dorsey, Windhorst, Hannaford, Whitney & Halladay, Robert A. Schwartzbauer and Elizabeth A. Goodman, Minneapolis, for Turners Crossroad Development Co., et al.

Johnson & Eastlund and Douglas J. Carney, Minneapolis, for Eddie Webster's Inc. et al.

Heard before PETERSON, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Appeal by McCarthy Enterprises from order of Hennepin County District Court of May 5, 1978, granting summary judgment to Turners Crossroad Development Co. and Klodt Companies, Inc., and directing deletion of certain restrictions from certificates of title for a tract of land, in a proceeding subsequent to the initial registration of land, and judgment entered June 7, 1978. Respondents have filed a notice of review pursuant to Rule 106, Rules of Civil Appellate Procedure. We affirm.

The issues raised by this appeal include the following:

1. Is the restriction in the deed of 1949 a covenant that "runs with the land"?

2. Did the appellant's reservation of the rights to Tract I granted by the deed of 1949 in the conveyance of 1975 result in extinguishment of the covenant?

3. Can appellant enforce the covenant?

4. Will the restriction in the deed of 1949 be rendered invalid on April 23, 1979, by operation of Minn.St. 500.20, subd. 2?

a. Was this issue ripe for determination by the district court?

b. Does Minn.St. 500.20, subd. 2, apply to the restriction in question?

c. Is Minn.St. 500.20, subd. 2, unconstitutional?

On April 22, 1949, McCarthy's St. Louis Park Cafe, Inc. (hereinafter referred to as "McCarthy's") conveyed a tract of land located near the intersection of U. S. Highway No. 12 and Turners Crossroad in St. Louis Park to the Minneapolis Baseball and Athletic Association (hereinafter referred to as "Baseball"). This tract of land shall be referred to herein as Tract I. The warranty deed by which the tract was conveyed contained the following restrictive covenant:

"The grantee, its successors and assigns, shall not keep or permit to be kept on the demised premises * * * or on any buildings erected thereon, intoxicating liquors or foods or commercial sale other than as is usually incident to the operation of ball park athletic contests of all kinds, circuses and exhibitions, nor shall any on-or-off sale liquor establishment of any kind or description be operated, permitted or kept on said premises, nor shall any restaurant where food is served to the public be maintained or operated on said premises, or in any building erected thereon, provided however, nothing herein contained shall prohibit the use of said premises for the preparation, serving and sale of beer, food and refreshments of all kinds incident to and usually prepared, served and sold in connection with the operation or conduct of ball park athletic contests of all kinds, circuses and other exhibitions of any kind or description. The sale of all of the foregoing is hereby expressly permitted. The above covenant shall run with the land."

At the time of the conveyance to Baseball, McCarthy's owned a tract of land located directly north of Tract I, across Wayzata Boulevard, upon which it operated an on- and off-sale liquor establishment and a restaurant (Tract II). During the negotiations between Baseball and McCarthy's, Baseball's counsel suggested that the restrictive covenant "should only last during such time as McCarthy's owned that restaurant." However, the purpose of the covenant, according to McCarthy's counsel, was for "protection against anybody using the [Baseball] property for a purpose they did not want it for or want there"; accordingly, the suggestion made by Baseball's counsel did not survive the negotiations. At the time those negotiations were being conducted, Baseball intended to use Tract I for the construction and operation of an athletic stadium. Although Baseball obtained municipal authorization to build and operate such a stadium, it did not do so.

On April 15, 1968, appellant McCarthy Enterprises acquired all of the assets of McCarthy's. The purchase agreement specifically provided that appellant was acquiring "all contingent remainders, rights of reverter, and/or contract rights" which McCarthy's owned in Tract I. A quit claim deed was executed and delivered by McCarthy's to appellant on April 15, 1968, "for the express purpose of assigning to party of the second part all rights which party of the first part shall have in [Tract I], which rights to be so transferred shall include without limitation those rights in the nature of contractual covenants, contingent remainders, and rights of reverter."

On April 10, 1975, appellant and Eddie Webster's Inc. and Eddie Webster's Pub (hereinafter referred to collectively as "Webster's") entered into a property exchange agreement pursuant to which appellant agreed to convey Tract II to Webster's. The property exchange agreement specifically provided that Webster's "shall not obtain any right, title or interest in the benefits of" the restrictive covenant burdening Tract I. Thereafter, on September 5, 1975, appellant executed and delivered a warranty deed conveying Tract II to Webster's. That warranty deed contained the following limitation:

"* * * subject to the reservation by the party of the first part [Appellant] of the rights reserved by the Grantor in that certain deed [conveying Tract I to Baseball], it being the intent of parties of the first part and second part hereto that *said rights shall not, in any event, be extinguished by the reservation herein provided for.* With respect to such reserved rights, party of the first part hereby affirms to second party the covenant set forth in Exhibit A annexed hereto which has heretofore been made by first party to second party and which is hereby incorporated herein. * * *" (Italics supplied.)

The covenant last referred to provided that appellant "shall not, for a period of 7 years from and after April 10, 1975, consent and agree to the use of the parcel of land [Tract I] * * * for a restaurant which would be competitive with that operated by Eddie

Websters, Inc. on the property described in the deed to which this Exhibit is attached and which would violate the restrictions contained in the aforesaid deed dated April 22, 1949."

On December 2, 1977, respondent Turners Crossroad Development Co. was issued a certificate of title to Tract I subject to the restrictive covenant. Thereafter, a portion of Tract I was conveyed to respondent Klodt Companies, Inc. Respondents allege that they now desire to utilize Tract I to construct restaurants and bars.

Respondent Turners Crossroad Development Co. commenced this action in Hennepin County District Court in January 1978 as a proceeding subsequent to the initial registration of land seeking an order pursuant to Minn.St. 508.71 directing the deletion of certain restrictions from the certificates of title for Tract I. Responses were filed by appellant McCarthy Enterprises and by Webster's. Respondent Klodt Companies, Inc., intervened.

On February 28, 1978, respondents moved for summary judgment. The motion was briefed extensively and orally argued at a special term of the district court on March 10, 1978.[1] In its order of May 5, 1978, granting summary judgment to respondents, the trial court held that the restrictions are not enforceable because they have become nominal and of no actual and substantial benefit to any party and because they have been extinguished. With respect to the first of those grounds, the court apparently found there was no genuine issue of material fact that the benefit of the restrictive covenant ran with Tract II and that:

" * * * There is a patent injustice in allowing McCarthys to enforce a covenant not to sell liquor in a matter in which it retains no interest whatsoever. This Court has serious reservations about the wisdom of allowing provisions contained in a 1949 real estate transaction, made to facilitate the bringing of a major

league baseball team to the Twin Cities, to prevent the development of a substantial piece of real estate in 1978."

With respect to the latter issue, the trial court found that appellant's reservation of rights in the restrictive covenant at the time it conveyed Tract II to Webster's extinguished the restrictions as a matter of law "the intent of the parties otherwise notwithstanding."

The trial court declined to rule on respondents' request that the restrictions be declared inoperative as of April 23, 1979, pursuant to Minn.St. 500.20, subd. 2, because of its disposition of the other issues and because the issue was not "right for judicial determination at this time." Despite this ruling, the trial court held Minn.St. 500.20, subd. 2, constitutional.

A threshold issue in this case is whether the district court's granting of a summary judgment to respondent was appropriate.

Rule 56.03, Rules of Civil Procedure, provides that summary—

"[j]udgment shall be rendered forthwith if the pleadings, depositions, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law."

On a motion for summary judgment, the court is to determine only whether a genuine issue of fact exists; it is not to resolve any factual issue. *Anderson v. Twin City Rapid Transit Co.,* 250 Minn. 167, 186, 84 N.W.2d 593, 605 (1957). A motion for summary judgment should be denied if reasonable persons might draw different conclusions from the evidence presented. 250 Minn. 186, 84 N.W.2d 605.

It is generally recognized that if the terms of a contract are at issue or any of its provisions are ambiguous or uncertain, summary judgment is not appropriate. *Donnay v. Boulware,* 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966). This rule is intended to

1. The order granting summary judgment erroneously states that oral argument was held on March 1.

guarantee that the parties to a contract have a full opportunity to present evidence that will clarify or explain the unclear terms.

In the contract at issue here the terms are not patently ambiguous. The question regarding the interpretation of the phrase "shall run with the land" is raised by appellant, not by the document itself. In addition, all external evidence that might be relevant to interpretation of any ambiguity was before the district court and was undisputed. (This included evidence that might properly be excluded under the parol evidence rule.)

 Where the intent of the parties may be gained wholly from the writing, the construction of the contract is for the court. *Donnay v. Boulware,* 275 Minn. 44, 144 N.W.2d 716. In the present case, the district court reasonably determined that the language was not ambiguous and no extrinsic evidence was necessary. That determination is equivalent to a determination that there is no genuine issue of material fact. Since the district court determined that the contract was not ambiguous, it properly ruled on all questions of law relating to the validity or enforceability of the contract.

 1. The first issue raised is whether the restriction on the sale of liquor and food in the 1949 deed is a covenant that runs with the land.[2] This court defined a covenant that runs with the land in *Pelser v. Gingold,* 214 Minn. 281, 285, 8 N.W.2d 36, 39 (1943):

> " * * * A covenant is said to run with the land when it touches or concerns the land granted or demised. Generally speaking, a covenant touches or concerns the land if it is such as to benefit the grantor or the lessor, or the grantee or lessee, as the case may be. As the term implies, the covenant must concern the occupation or enjoyment of the land granted or demised and the liability to perform it, and the right to take advan-

tage of it must pass to the assignee. Conversely, if the covenant does not touch or concern the occupation or enjoyment of the land, it is the collateral and personal obligation of the grantor or lessor and does not run with the land. * *"

The covenant must not only touch and concern the land; it must also be the intent of the covenanting parties that the covenant run with the land, that is, that their successors or assigns will be bound by the terms of the covenant. See, *Kettle River Railroad v. Eastern Railway,* 41 Minn. 461, 471, 43 N.W. 469, 473 (1889); Restatement, Property, § 531 (1944).

The principal evidence of intent in the instant case is this sentence, at the end of the paragraph containing the restriction: "The above covenant shall run with the land." Although such a statement is not necessarily conclusive on the issue of intent, see, *Kettle River Railroad v. Eastern Railway, supra,* neither party to this appeal argues that this statement is not to be given effect. Appellant does argue, however, that only the burden of the covenant, not the benefit, is intended to run with the land. According to appellant's argument, the burden of the covenant runs with Tract I and is binding on all successors or assigns of Baseball (the grantee of the 1949 deed) but the benefit of the covenant does not run with Tract II, being instead personal to McCarthy's (grantor of the 1949 deed).

Appellant's position with respect to Tract I is inconsistent with the general policy against restraints on free alienation of property. This policy is discussed in Restatement, Property, § 543, comment *c*:

> "In order that the burden of a promise respecting the use of land of the promisor may run with that land, it is necessary that, by the performance of the promise, there will be a benefit realized by the beneficiary in the use of his land, or that, by the carrying out of the transaction of

**2.** This court has not previously dealt with the specific issues raised in this appeal. The courts of other jurisdictions have focused on the circumstances and the form of the convey-

ance and, as a result, there are no clearly emerging trends. See, Annotation, 25 A.L.R.3d 897 (1969), and cases cited therein.

which the promise is a part, there will come to the promisor a benefit in the use of his land. Thus a promise that the promisor will not carry on a certain kind of business on his land will not run with that land unless the performance of the promise aids the beneficiary of it in the use by him of some land, and a promise by the promisor that he will make certain payments will not run with specific land owned by him unless the payments are to be made in return for benefits received by him in the use of that land * * *. The requirement of 'reciprocal benefit,' as applied to the running of the burden of promises respecting the use of land, is based upon a social policy adverse to the placing of undue restrictions upon the freedom of alienation of land. If the burden of a promise runs with land, the freedom of alienation of that land is to some extent restricted. The resulting restriction is permitted only when there is a countervailing benefit in the use of either the burdened land or of some other land * * *."

The effect of this policy is illustrated by the treatment given by the Restatement to covenants of the type at issue here. Section 537 provides:

"The successors in title to land respecting the use of which the owner has made a promise can be bound as promisors only if

(a) the performance of the promise will benefit the promisee or other beneficiary of the promise in the physical use or enjoyment of the land possessed by him, or

(b) the consummation of the transaction of which the promise is a part will operate to benefit and is for the benefit of the promisor in the physical use or enjoyment of land possessed by him, and the burden on the land of the promisor bears a reasonable relation to the benefit received by the person benefited."

In discussing "physical use or enjoyment," comment f states:

"For a promise to run with the land of the promisor it is not enough that the performance of the promise operates to benefit either the promisor or the beneficiary of the promise in the use of his land but it must operate to benefit him in the physical use of his land. It must in some way make the use or enjoyment more satisfactory to his physical senses. It is not enough that the income from it is increased by virtue of it. Thus a promise that land of the promisor will not be so used as to compete with a business carried on upon the land of the promisee does not so affect the land of the promisor that it can be made to run with it. Though the benefit to the promisee in being free from competition may be clear, the risk of social harm involved in a possible monopoly of the business uses of land in an extended area is sufficient to induce the refusal to extend the 'running of promises' to such cases." [3]

In contrast, section 543 provides:

"(1) The benefit of a promise can run with land only it if is a promise respecting the use of land of the beneficiary of the promise.

"(2) A promise is a promise respecting the use of land of the beneficiary of the promise if and only if the performance of the promise will

"(a) constitute an advantage in a physical sense to the beneficiary in the use of his land, or

"(b) decrease the commercial competition in his use of it, or

"(c) constitute a return to the beneficiary of the promise for a use of it by the promisor."

Comment e states:

"A promise is a promise respecting the use of land in such a sense as to enable the benefit of the promise to run with

---

**3.** This comment is illustrated by the following example: "A, the owner of two vacant lots lying side by side, sells one to B who contemplates erecting and operating a drug store upon it. A agrees on behalf of himself and his as-

signs that no drug store will be operated upon the lot retained. A's promise does not so affect the land as to enable A's successor to be held liable as a promisor upon A's promise." Restatement, Property, § 537, Illustration 1.

land though the performance of the promise affects the use of the land of the beneficiary of the promise in no way other than to decrease the commercial competition in the use of it as in the case of promises not to compete with a business use carried on upon the land * * *. The promise may be, on the part of the promisor, personal only in the sense that it is not a promise respecting the use of any land of the promisor, or it may be a promise that the competing use shall not be carried on upon neighboring premises owned by him. The fact that the promise is personal on the part of the promisor does not prevent the benefit of it from running * * *." [4]

 Applying the reasoning of the Restatement to the present case, we cannot accept appellant's argument that the burden of the covenant runs with Tract I but the benefit of the covenant does not run with Tract II. It is clear from both the language of the restriction and the surrounding circumstances that, when created, the purpose of the restriction was to protect McCarthy's restaurant and liquor store from competition. [5] Thus the covenant appears to fall within section 543(2)(b): where performance of a promise will decrease the commercial competition in the beneficiary's use of his land, that promise is "a promise respecting the use of land," and consequently, the benefit of that promise can run with the benefited land. The covenant is also covered by the statement in comment f to section 537 that a promise that the land of the promisor will not be used so as to compete with a business being conducted on the land of the promisee does not so "affect" the land of the promisor that it will run with that land. [6]

 2. Section 545 of the Restatement provides:

"The beneficiary of a promise respecting the use of land of the beneficiary, which promise is capable of running with

4. This comment is illustrated by the following examples: "2. A is the owner of two adjacent buildings. Both are adopted to use as hotels. A is using one as a hotel and the other as an apartment house. He sells the one he is using as an apartment house to B. B promises on behalf of himself and his assigns that for a period of ten years he will not use the building on the premises conveyed for the entertainment of transient guests. The promise is for the protection of A's business in operating his hotel upon the land retained. The promise so affects A's use of his hotel as to be capable of running with the land upon which it is located.

"3. A, who is carrying on a banking business on Blackacre, sells Blackacre to B, at the same time making a promise to B and his assigns that he, A, will not for a period of ten years engage in banking in the village in which Blackacre lies. It is expressly stipulated that the promise shall run with Blackacre. A has no other land in the village. The promise so affects the operation of the banking business on Blackacre as to be capable of running with it." Restatement, Property, § 543, Illustrations 2 and 3.

5. The covenant at issue here is essentially a covenant not to compete. Such covenants are disfavored in the law as potentially restraining trade, are strictly construed, and are enforced only where reasonable. See, *Bennett v. Storz Broadcasting*, 270 Minn. 525, 134 N.W.2d 892 (1965); *Arthur Murray Dance Studios v. Witter*, 62 Ohio L.Abs. 17, 105 N.E.2d 685 (1952). Many courts treat covenants restricting the use of land with disfavor, strictly construing them in favor of the free use of property. See, e. g., *Brasher v. Grove*, 551 S.W.2d 302 (Mo.App. 1977); *Edwards v. Southampton Extension Civic Club*, 540 S.W.2d 535 (Tex.Civ.App.1976).

Such a strict construction in favor of respondents is particularly appropriate here where the covenant has no time restriction and prohibits a broad range of commercial activity. In addition, the current owner of Tract II apparently has little interest in the benefits of the covenant. Webster's was unwilling to pay $100,000 for the restriction, although its president stated that the restriction was of "substantial economic benefit" to it and that it did not intend the restriction be extinguished. Also, Webster's is not a party to this appeal.

6. Appellant also argues that the trial court could not have found that the covenant runs with Tract II because Tract II is not mentioned in the restriction. It is not necessary, however, that the benefited land be specifically mentioned in the covenant. From the circumstances surrounding the conveyance of Tract I, the trial court reasonably found that the benefit of the covenant was to run with Tract II. McCarthy's owned a restaurant and liquor store on adjacent property; and the terms of the covenant specifically prohibit any sale of liquor that would compete directly with McCarthy's business; therefore, the covenant benefited McCarthy's property (Tract II).

the land, can, when conveying the land, prevent, by manifesting an intention to that effect, the promise from running with the land."

In the instant case, the promise in the 1949 deed is capable of running with the land. Appellant, when conveying Tract II to Webster's manifested the intention that the promise not run with the land by including the following provision in the deed to Webster's:

"Subject to all restrictions, reservations, easements, and encumbrances of record, if any, and subject to the reservation by the party of the first part of the rights reserved by the Grantor in that certain deed dated April 22, 1949, * * * it being the intent of parties of the first and second part hereto that said rights shall not, in any event, be extinguished by the reservation herein provided for. * * *"

Comment *b* to section 545 states that "[t]he effect of withholding the promise from the operation of a conveyance may be to extinguish liability on the promise." If in the original promise the beneficiary is given "the power to sever the promise from one piece of land and either attach it to another piece or turn it into a promise the benefit of which accrues to him personally," liability on the promise will not be extinguished. Absent such explicit authorization, however, the effect of severance will be to extinguish liability on the promise. Nothing in the promise at issue here authorizes appellant to sever the promise from the land. Thus, under the rule of section 545, the covenant was extinguished by appellant's attempted reservation of rights to the benefits of the covenant. Cf., *Cadwalader v. Bailey*, 17 R.I. 495, 502, 23 A. 20, 23 (1891) ("The easement, being appurtenant to the land, cannot exist alone.")

■ 3. Because we have found that the covenant was extinguished, neither appellant nor Webster's may enforce it. Even if we had found that the benefit of the

original promise was personal to appellant, appellant would not be able to enforce it because appellant no longer has any interest in the benefited land and because appellant can no longer benefit from the protection provided by the promise. The original covenant was clearly intended to benefit appellant's business interest in Tract II. Because that interest no longer exists, the covenant is of no further value to and cannot be enforced by appellant. See, e. g., *Forman v. Safe Deposit & Trust Co.* 114 Md. 574, 80 A. 298 (1911); *Stegall v. Housing Authority*, 278 N.C. 95, 178 S.E.2d 824 (1971).

4. Since we affirm the district court's judgment for respondents, we need not determine any of the issues raised regarding Minn.St. 500.20, subd. 2. We feel, however, that these issues are important and that we might offer some guidance to the bench and bar of Minnesota by discussing them.

■ a. Respondent sought an order from the district court declaring that the restriction in the 1949 deed would cease to be valid and operative as of April 23, 1979, under the provisions of Minn.St. 500.20, subd. 2.[7] The district court found that the question whether the restriction in the 1949 deed was subject to Minn.St. 500.20, subd. 2, was not "right for judicial determination." We believe that the question as to whether the controversy is ripe for determination is answered by our recent decision in *Holiday Acres No. 3 v. Midwest Federal Savings & Loan Association*, 271 N.W.2d 445 (Minn. 1978). While we may not approve the bringing of a declaratory judgment action such as the instant one where the expiration of the 30 years is more remote in time, where, as here, the expiration date is but a few months distant, a declaratory judgment action is appropriate. Thus, we hold a justiciable controversy did exist.

b. Appellant argues that the phrase "created by any other means" used in subdi-

7. "All covenants, conditions, or restrictions hereafter created by any other means, by which the title or use of real property is affected, shall cease to be valid and operative 30 years after the date of the deed, or other instrument, or the date of the probate of the will, creating them; and after such period of time they may be wholly disregarded."

vision 2 excludes any covenants, conditions or restrictions "annexed to a grant, devise or conveyance of land," the phrase used in subdivision 1. It further argues that although subdivision 2 refers to "the deed," a deed and a conveyance cannot be equated.

■ Although it may be true that not all conveyances of land are by deed, most are by deed, and most deeds are conveyances of land. To read subdivision 2 as not applicable to conditions in conveyances would leave that portion of the statute with little effect. A more reasonable reading of the statute is that the two subdivisions are addressed to different problems. Subdivision 1 addresses the problem of conditions that have become "nominal." It affects conditions in existence at the time the statute was enacted. Subdivision 2 addresses the more general problem of conditions that impose a perpetual restriction on the use or title of land, whether or not the condition is "nominal." This subdivision affects only those covenants, conditions, or restrictions created after the date of the statute and imposes a 30–year limit on their validity. The reference to "the date of the deed, or other instrument, creating them" indicates that any covenant, condition, or restriction contained in a deed that is a conveyance of real property is covered by subdivision 2. This interpretation is supported by our finding in *Housing and Redevelopment Authority v. United Stockyards Corp.,* 309 Minn. 331, 244 N.W.2d 275 (1976), that a reversionary interest contained in a quitclaim deed conveying land would become inoperative under subdivision 2. If the statute is to achieve its purpose of eliminating restrictions on alienability of land, subdivision 2 must be read as applying to covenants, conditions, or restrictions created by any instrument conveying land.

c. Although it need not have reached the issue, the district court declared Minn.St. 500.20, subd. 2, to be constitutional. Appellant argues that the statute is a taking of property without due process of law.

■ Because the statute applies only to "covenants, conditions, or restrictions

hereafter created," its effect is prospective, not retrospective. The statute itself is notice to all those who place any restriction on the use of land that such restriction will become invalid 30 years after its creation. It is similar, for example, to a statute or regulation limiting the duration for the validity of a driver's license or to the Rule Against Perpetuities. The statute therefore is found to be constitutional.

■ We find that even in the event the covenant would not be extinguished by operation of the common law, it will automatically terminate on April 23, 1979 by reason of Minn.St. 500.20, subd. 2, cited above.

Affirmed.