**Kay W. ROBERTS, Appellant,**

v.

**Thomas L. BAUMGARTNER, Respondent,**

**Steven D. Rekken, individually and d.b.a. P.T.–O.T. Associates, Respondent,**

and

**Steven D. REKKEN, Third Party Plaintiff, Respondent,**

v.

**Robert L. DAHL, et al., Third Party Defendants, Respondents.**

No. C7–86–638.

Court of Appeals of Minnesota.

Aug. 12, 1986.

Robert Birnbaum, Marker & Birnbaum, P.A., Minneapolis, for Kay W. Roberts.

Terry L. Wiles, Lamb, McNair, Larson & Carlson, Ltd., Fargo, N.D., for Thomas L. Baumgartner and Robert L. Dahl.

Edmund G. Vinje, II, Vinje Law Office, Fargo, N.D., for Steven D. Rekken, individually and d.b.a. P.T.–O.T. Associates, Respondents.

Considered and decided by SEDGWICK, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This appeal is from summary judgment entered against appellant Kay W. Roberts in his action for breach of a restrictive covenant. We affirm.

## FACTS

Appellant Kay Roberts is a licensed physical and occupational therapist engaged in furnishing those services to nursing homes and other health care facilities, both personally and through subcontracts with other licensed individuals. Roberts provided physical and occupational therapy services to the Moorhead Healthcare Center (MHC) from 1979 to 1984, under the terms of yearly contracts.

Roberts subcontracted the MHC business to a partnership, respondent P.T.–O.T. Associates, which was formed by the individual respondents. Respondents Baumgartner and Rekken signed the 1983–84 subcontracts as partners of P.T.–O.T. Associates.

Roberts' contract with the owner of MHC ran from December 16, 1982 to December 15, 1983. His subcontracts with P.T.–O.T. ran from January 16, 1983 through January 15, 1984. The physical and occupational therapy services were covered by separate but virtually identical subcontracts.

The subcontracts included the following termination provision:

Either party shall have the right with or without cause to terminate said agreement on sixty (60) days written notice * * * *.

The subcontracts included a handwritten "addendum" giving the partnership a first

option of renewal. Roberts' contract with MHC provided for termination after 30 days' written notice, and permitted renewal by written agreement of the parties.

Roberts claims that on January 7, 1984, he received a letter from the MHC administrator notifying him of MHC's desire to terminate the agreement. On January 10, 1984, he contacted the partnership's business manager requesting an extension of the subcontract through January 31. The partnership agreed to the extension. On February 1, 1984, the partnership entered into an agreement directly with MHC to provide physical and occupational therapy services.

The 1983–84 subcontracts included the following "Restrictive Covenants":

> "Associates" [the partnership] agrees that all patients and related confidential records remain the exclusive property of the facility and shall not be taken by "Associates" if said agreement is terminated, with or without cause, by "Associates" or by mutual agreement of both parties.
>
> "Associates" further agree that *upon any such termination* of such agreement with "Roberts", "Associates" will not establish an occupational therapy clinic or otherwise perform or offer occupational therapy services at Moorhead Healthcare Center, nor shall "Associates" or their professional staff employees become employees of said nursing home during the twelve (12) month period following the date of such termination.

(Emphasis added).

Appellant sued claiming a breach of the restrictive covenants. Respondent Rekken brought a third-party action against three of the partners not individually named in the suit, and a crossclaim against Baumgartner and the partnership, claiming he had withdrawn from the partnership.

The respondents moved for summary judgment on the grounds that the restrictive covenants applied only following a termination of the subcontracts by one or both parties, and not after expiration of their yearly term. Accordingly, they contended their contract with MHC following the expiration of the 1983–84 subcontracts was not in violation of the covenant.

The trial court granted summary judgment dismissing the complaint and third-party complaint. The court agreed with respondents that the subcontracts were not ambiguous, and the restrictive covenants did not require respondents to restrain from contracting with MHC after the expiration of the subcontracts.

## ISSUE

Did the trial court err in determining the restrictive covenants were unambiguous and did not apply following expiration of the subcontracts?

## ANALYSIS

A writing is ambiguous if, judged by its language alone and without resort to extrinsic evidence, it is reasonably susceptible of more than one meaning. *Metro Office Parks Co. v. Control Data Corp.*, 295 Minn. 348, 351, 205 N.W.2d 121, 123 (1973). The determination of whether an ambiguity exists is a question of law. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979).

The trial court ruled that the restrictive covenant language "such termination," referred only to the "terminat[ion], with or without cause" in the preceding paragraph. In *Grossman v. Sherman*, 198 Colo. 359, 599 P.2d 909, 911 (1979), the Colorado supreme court held that a provision for payment of liquidated damages in the event the employee-physician entered competitive practice after the "termination" of his one-year contract, unambiguously referred only to termination by the parties and not to expiration of the contract by its own terms. That conclusion is reinforced in this case by the specific reference to the termination by the parties "with or without cause."

There are several provisions which relate to "termination" or expiration of the sub-

contracts. In paragraph 2, the agreement provides: "The term of this agreement shall commence on * * *, and continue for one year through * * * *." In paragraph 10, the agreement grants to each party a right to terminate "with or without cause." The handwritten addendum gives respondents a "first option" to renew the agreement.

The subcontracts do not use the term "expiration" or any other language to distinguish "natural" termination from termination by the parties. But paragraph 2, while it speaks of the "term of this agreement," does not use the word "termination" to refer to the expiration of the subcontracts. In the subcontracts, the word "termination" appears only in relation to the conclusion of the agreement by the action of the parties. Although we agree with appellant that the dictionary definition of "termination" would encompass the expiration of the term of the agreement, the agreement itself assigns a narrower reference. *See Metro Office Parks Co. v. Control Data Corp.*, 295 Minn. 348, 352, 205 N.W.2d 121, 124 (1973) (in determining whether a contract is ambiguous, words cannot be read in isolation). The case cited by appellant relies on language far broader than that used in the subcontracts here. *Karlin v. Weinberg*, 77 N.J. 408, 412, 390 A.2d 1161, 1164 (1978) ("termination ... for any reason whatsoever").

A determination that the language of a contract governing the dispute between the parties is not ambiguous supports the granting of summary judgment, since it is equivalent to finding there are no genuine issues of material fact. *Matter of Turners Crossroad Development Co.*, 277 N.W.2d 364, 369 (Minn.1979).

### DECISION

The trial court did not err in granting summary judgment.

Affirmed.