FMC CORPORATION, a Delaware corporation, Plaintiff,

v.

NORTHERN PUMP COMPANY, a Minnesota corporation, Defendant and Third-Party Plaintiff,

v.

UNITED STATES of America, and Northern Ordnance, Inc., a Minnesota corporation, Third-Party Defendants.

Civ. No. 4–84–1365.

United States District Court, D. Minnesota, Fourth Division.

Aug. 20, 1987.

---

Joe A. Walters and Wm. E. Flynn, O'Connor and Hannan, Minneapolis, Minn., for plaintiff and Northern Ordnance; William W. Warren, FMC Corp., of counsel.

William Killion, David Coyne, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for defendant and third-party plaintiff.

Letitia J. Grishaw, Land & Natural Resources Div., Environmental Defense Section, U.S. Dept. of Justice, Washington, D.C., for the U.S.

## ORDER

DOTY, District Judge.

This action arises out of plaintiff FMC's suit against defendant Northern Pump Company ("Pump") for a declaratory judgment and recovery of response costs and future damages, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601–9657, and under claims of contribution and indemnity. Jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1332. Pump has filed a third-party Complaint against third-party defendant, Northern Ordnance, Inc. ("Ordnance") for a declaration in contribution and indemnity under CERCLA, and under claims of breach of lease, negligence, nuisance, and vicarious liability to the extent Pump is found liable to FMC. It has also filed a third-party Complaint against third-party defendant, the United States, for a declaration in contribution and indemnity under the Federal Torts Claims Act, 28 U.S.C. §§ 2671–2680 and CERCLA, 42 U.S.C. § 9601–9657. This matter is before the Court on two motions for summary judgment. Pump seeks summary judgment on all claims in FMC's Complaint or alternatively, for partial summary judgment on FMC's claims that Pump is liable for the acts of Ordnance. Ordnance seeks summary judgment on Pump's third-party claims against it.

*Background*

FMC is a conglomerate operating a manufacturing plant through its Northern Ordnance Division in Fridley, Minnesota. In 1980, the Minnesota Pollution Control Agency ("MPCA") learned that a tract south of the manufacturing plant had been used as a waste disposal site. Upon investigation by the United States Environmental Protection Agency, MPCA, and FMC, it

was discovered that this site contained harmful waste products, particularly including trichloroethylene ("TCE"), which are defined as hazardous under Section 9601(14) of CERCLA, and that the disposal of these products occurred for several years prior to and after 1964.

On June 8, 1983, FMC entered into an Administrative Order and Interim Response Order by Consent under which FMC agreed to take remedial action to clean up the facility. On October 14, 1986, FMC entered into a second Response Order by Consent pursuant to which it is obligated to clean up the contaminated groundwater under the facility. FMC has incurred and will continue to incur significant response costs in cleaning up the facility.

Pump owned, or owned in part, the Fridley facility from July 2, 1945 to January 31, 1964. Pump's predecessor, also called Northern Pumnp Co. ("Pump 1"), built the facility in 1940 for the purpose of manufacturing ordnance for the use of the United States Navy. Pump 1 incorporated Ordnance in 1942 as its wholly owned subsidiary to operate the facility, and leased it to Ordnance. In 1945 Pump 1 transferred its assets, including its shares of Ordnance, to Hawley Company, which changed its name to Northern Pump Company, the defendant herein. Pump continued to lease the facility, or that part which it owned, to Ordnance until 1964.

On September 18, 1947, Pump sold a major portion of the facility to the United States Navy. Thereafter, Ordnance operated the facility pursuant to separate leases with Pump and the United States Navy.

Pump and FMC entered into negotiations in 1963 for the sale of Pump's interest in Ordnance to FMC. The parties reached an agreement as to the terms of the sale on December 31, 1963 (the "1963 Agreement" or the "Agreement"). This Agreement became effective in 1964. Pursuant to the terms of the Agreement, Pump sold FMC all its shares of Ordnance, and all assets which it owned. Since 1964, FMC has operated the facility through its Northern Ordnance Division. FMC undisputedly contin-

ued the disposal of hazardous waste, through that division, until 1969.

FMC seeks to recover that portion of its cleanup costs attributable to the period of time that Northern Pump owned, or owned in part, the Fridley facility and leased it to Ordnance. FMC contends that Pump is potentially liable under CERCLA and that it must share the costs of cleaning up the Fridley facility pursuant to 42 U.S.C. § 9607(a)(4)(B). FMC also argues that Pump is liable under Article 12 of the 1963 Agreement, providing for indemnification, and under a claim for common law contribution. Pump contends that Articles Eleven and Twenty-two of the 1963 Agreement, and a release granted Pump by FMC in 1967 ("the Release" or "the 1967 Release"), released it from Ordnance's liability for disposing of hazardous waste. Further, Pump contends that only Ordnance disposed of hazardous wastes and that it did not participate in such disposal. Accordingly, it contends that it is not liable to FMC under its CERCLA claim, claim for indemnification under Article Twelve, or claim for contribution. Alternatively, Pump argues that FMC assumed Ordnance's liabilities, and therefore is precluded from suing Pump or that FMC is barred from suing Pump, under the doctrine of unclean hands.

## ORDER

The Court finds for Pump and grants its motion for summary judgment on all of FMC's claims. Further, as Pump owes no monies to FMC, it will not seek damages from Ordnance. Accordingly, Ordnance's motion for summary judgment is denied.

## DISCUSSION

Summary judgment is a drastic remedy, *See, Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984); *See also, Snell v. United States*, 680 F.2d 545, 547 (8th Cir.), *cert. denied*, 459 U.S. 929, 103 S.Ct. 344, 74 L.Ed.2d 384 (1982). It is granted only if there is no genuine issue of material fact, and the movant is entitled to judgment as a

matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court must view the facts in the light most favorable to the non-moving party. *U.S. v. Advance Machine Co.*, 547 F.Supp. 1085, 1089 (D.C. Minn.1982). Further, the non-moving party is entitled to all reasonable inferences to be drawn from the facts disclosed in the pleadings and the evidence submitted to the Court. *Kresse v. Home Insurance Co.*, 765 F.2d 753, 754 (8th Cir.1985). However, upon a properly supported motion, summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's cases and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## I.

Liability for the disposal of hazardous wastes is established under CERCLA which, in the words of Judge Magnuson of this Court, was enacted to address at least two congressional concerns.

> First, Congress intended that the federal government be immediately given the tools necessary for a prompt and effective response to problems of national magnitude resulting from hazardous waste disposal. Second, Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created.

*United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100, 1112 (D.Minn. 1982).

In relevant part, CERCLA provides that:

> (1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> · · · · · ·
>
> (4) ... shall be liable for—
>
> (A) all costs of removal or remedial action incurred by the United States Government or a state not inconsistent with the national contingency plan;
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
>
> (C) damages for injury to, destruction of, or loss of natural resources, including reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

42 U.S.C. § 9607(a).

Accordingly, liability may be found under CERCLA extending to all potentially responsible parties. Further, courts have construed the standard of liability under CERCLA to be strict except where a defendant can rely on at least one of the three defenses specified in 42 U.S.C. § 9607(b). *See, City of Philadelphia v. Stephan Chemical Co.*, 544 F.Supp. 1135, 1140 n. 4 (E.D.Penn.1982); *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 204 (D.C.Mo.1985). However, a person that is liable under the terms of the Act may by agreement be held harmless or indemnified by another party. 42 U.S.C. § 9607(e)(1).

■ All three parties to these motions are potentially liable under CERCLA. Because FMC currently owns and operates the Fridley facility through its Northern Ordnance Division, FMC is potentially liable under CERCLA. 42 U.S.C. § 9607(a), *see, State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2nd Cir.1985). Indeed, this potential liability provided the basis for FMC's execution of two Response Orders by Consent. Pump is a person[1] who owned the Fridley facility at the time hazardous wastes were disposed of there and it is potentially liable under CERCLA. *See, State of New York*, 759 F.2d at 1044.

---

1. 42 U.S.C. § 9601(21) provides that a "person" is, among other things, a corporation. Defend-

ant Pump and third-party defendant Ordnance

Ordnance[2] is a person who operated a facility at the time hazardous wastes were disposed of and therefore is potentially liable under CERCLA. *See, Idaho v. Bunker Hill,* 635 F.Supp. 665 (D.Idaho 1986).

## II.

FMC claims that, solely by virtue of Pump's landowner status under CERCLA, Pump is strictly liable to FMC and, pursuant to Article Twelve of the 1963 Agreement, must pay some portion of the costs of cleaning up the Fridley site to FMC. Article Twelve provides that:

> Except as provided in this Agreement, FMC shall not assume any liabilities or obligations of Pump, and Pump agrees that it will not permit any such liabilities or obligations to become a lien upon the assets transferred to FMC hereunder; and Pump further agrees to indemnify and hold FMC, Ordnance and Railroad harmless against such liabilities and obligations of Pump.

■ FMC contends that it has paid for or assumed Pump's CERCLA liability and relies on Article Twelve for its basis for recovery of an amount equal to Pump's alleged CERCLA liability, and argues as well that it has a claim based on a common law cause of action for contribution or indemnity. The Court believes that FMC has not properly construed the law of CERCLA. A reading of numerous CERCLA cases reveals that *two* factors are necessary for the recovery of response costs between private parties: 1) CERCLA liability and 2) accountability for the disposal of hazardous wastes. This conclusion follows from the holding in the numerous cases discussing the scope of CERCLA liability, and cases finding that such liability may include a finding of joint and several liability and a right of contribution. *See, United States v. A & F Materials Co., Inc.,* 578 F.Supp. 1249, 1255 (S.D.Ill.1984) (Discussing the concept that principles of common law must be used to determine the scope of liability, as "CERCLA does no more than declare who is liable. ... CERCLA, on its face, gives no guidance on how to solve the problem of commingling, or whether liability should be apportioned based on volume or toxicity....") *See also, United States v. New Castle County,* 642 F.Supp. 1258 (D.Del.1986); *Wehner v. Syntex Agribusiness, Inc.,* 616 F.Supp. 27 (D.C.Mo.1985); *State of Colorado v. Asarco, Inc.,* 608 F.Supp. 1484 (D.Colo.1985); *United States v. A & F Materials Co., Inc.,* 578 F.Supp. 1249 (S.D.Ill.1984); *United States v. Chem-Dyne Corp.,* 572 F.Supp. 802 (S.D.Ohio 1983). A recent amendment to CERCLA, providing for a right of contribution, 42 U.S.C. § 9613(f)(1), further indicates that accountability, as well as legal liability, is required to award a responsible party recovery of its response costs from a private party. That provision provides that, "Any person may seek contribution from any other person who is liable or potentially liable under Section 9607(a) of this title .... In resolving contribution claims, *the court may allocate response costs* among liable parties *using such equitable factors as* the court determines *are appropriate.*" 42 U.S.C. § 9613(f)(1) (emphasis added). Further still, 42 U.S.C. § 9607(e)(1) clearly provides that CERCLA liability is not sufficient for the recovery of costs between private parties where one such party has released the other from its CERCLA liability.

■ Based on the above, the Court finds that Pump must not only be potentially legally liable under CERCLA, but must also be accountable for the disposal of hazardous wastes at the Fridley site in order for FMC to recover some portion of its response costs from Pump.

■ The Court finds that Pump is not accountable for the disposal of hazardous wastes at the Fridley facility. Accordingly, FMC cannot recover any portion of its response costs from Pump under any of its claims. This determination is based on the following findings:

(A) Pump's potential liability stems from the fact that Ordnance disposed of hazard-

---

are both corporations and therefore are persons within the meaning of the statutes.

2. Ordnance has not been formally dissolved and therefore presumably can be found liable.

ous waste at the Fridley facility prior to 1964;

(B) FMC released Pump from the liabilities of Ordnance, including liability based on future arising causes of action such as those arising under CERCLA; and

(C) Pump itself did not dispose of hazardous waste at the Fridley site at any time and Ordnance's waste disposal cannot be legally imputed to Pump.

## A. *Ordnance Disposed of Hazardous Wastes*

There does not appear to be any real dispute as to the fact that Ordnance disposed of hazardous wastes at the Fridley site prior to 1964. FMC does not contend otherwise and admits several facts rendering the determination that Ordnance disposed of hazardous wastes a necessary conclusion. FMC admits that, at least from 1964–69, Ordnance, operating as FMC's Northern Ordnance Division, disposed of hazardous waste. FMC also admits that Ordnance operated the Fridley facility prior to 1964, having leased the real estate, buildings, production equipment, machinery and tools from Pump to conduct the manufacturing operation. It admits that Ordnance conducted the same operation after FMC's purchase of its assets in 1964 as it did prior to 1964. And it obviously admits that hazardous waste was disposed of at the Fridley facility prior to 1964.

## B. *FMC Released Pump From Ordnance's Potential CERCLA Liability*

The parties do not dispute that the 1967 Release does release Pump from the liabilities of Ordnance arising out of known or unknown claims which existed at the time of the Release. The parties only dispute whether the 1963 Agreement and 1967 Release embody a release from future arising causes of actions, such as that under CERCLA. The relevant provisions of the 1963 Agreement are as follows:

## ARTICLE ELEVEN

Pump shall be liable for and hereby assumes and agrees to reimburse and

hold Ordnance and FMC harmless by reason of:

.    .    .    .    .

(d) all liabilities of Ordnance now or hereafter arising, absolute or contingent, arising out of events occurring on or before December 30, 1963 ... to the extent not disclosed and adequately provided for on the Valuation Date Statements, ...

## ARTICLE TWENTY-TWO

At such time as the parties may mutually agree, but in no event later than January 1, 1967, they shall determine the liability of Pump pursuant to Article Eleven hereof, and shall make such settlement and execute such releases as may be appropriate; ....

The 1967 Release executed in response to Article Twenty-Two provides that:

In accordance with the terms of Article Twenty-Two of the Agreement dated December 31, 1963, between Northern Pump Company and FMC Corporation, FMC Corporation hereby releases and discharges Northern Pump Company from all claims, demands and causes of action which FMC had, has or may have arising under Article Eleven of said Agreement ....

In construing the Agreement and the Release, the law of the place of performance governs. *See, U.S. v. State of Minn.*, 113 F.Supp. 488, 494 (D.Minn.1953). The law of Minnesota governs this Court's interpretation of the parties Agreement and Release, as the transfer of Ordnance's assets, pursuant to the Agreement, occurred in Minnesota. The standard governing the Court's construction of a contract is clear. "If the contract is unambiguous, the Court may construe the provisions of the contract and no extrinsic evidence is necessary." *Fena v. Wickstrom*, 348 N.W.2d 389, 390 (Minn.App.1984). *See, also Matter of Turners Crossroad Development Co.*, 277 N.W.2d 364, 368 (Minn.1979). "Whether a contract is ambiguous is a legal determination in the first instance." *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982). Ambiguity exists if a contract provision is

susceptible to more than one reasonable interpretation. *Collins Truck Lines, Inc. v. Metropolitan Waste Control Commission,* 274 N.W.2d 123, 126 (Minn.1979). If any provisions of a contract are ambiguous, the proper construction of a contract is a question of fact for the jury and summary judgment is inappropriate. *Lewis v. Equitable Life Assurance Society,* 389 N.W.2d 876, 884 (Minn.1986); *Matter of Turners Crossroad Development Co.,* 277 N.W.2d at 368.

■ FMC contends that Article Twenty-Two, in providing for a determination of Pump's liability in 1967, means that only those claims, known or unknown, which could be determined as of 1967, could be released. The Court disagrees, finding that the language of the Release states unambiguously that FMC released Pump from future arising causes of action. The Release expressly states that Pump shall be released "from *all* claims, demands and *causes of action* which FMC has, had, or *may have* arising under Article Eleven (of the 1963 Agreement) ..." (emphasis added). Clearly, the Release covers "causes of action". Further, the words "may have" must be read in the context of the sequence in which they appear. Read in such context, the words can only mean a reference to the future and not to present unknown claims. *See e.g., Republic National Life Insurance Co. v. Lorraine Realty,* 279 N.W.2d 349 (Minn.1979) The Court believes that FMC's reading of Article 22 is unreasonable in light of the express language in the 1967 Release. It is a basic rule of contract construction that a contract must be interpreted in such a way that all provisions are given effect. *Telex Corp. v. Data Products Corp.,* 135 N.W.2d 681, 685, 271 Minn. 288 (1965); *See also, Republic National Life Insurance Co.,* 279 N.W.2d at 354. Adhering to this principle, the Court finds as a matter of law that FMC released Pump from future arising causes of action, and therefore from that arising because of Ordnance's potential CERCLA liability.

### C. *Pump Did Not Dispose of Hazardous Wastes*

Pump presented evidence to the Court indicating that it neither generated nor disposed of hazardous waste or knew that Ordnance disposed of hazardous waste. Earl Wigand, Administrative Engineer at Ordnance stated in deposition testimony that all persons involved in the manufacturing operations were Ordnance employees, that any type of chemical that was used in the manufacturing process was used by Ordnance and that any disposal of such chemical was done by employees of Ordnance. Deposition of E. Wigand, at 68–69. That testimony is substantiated by a report entitled "Naval Weapons Industrial Reserve Plant, Minneapolis, Minnesota, Operated by Northern Ordnance, Incorporated," dated April 10, 1961. That report states that "[w]ith the consent of the Navy Department, all contracts for supplies and the obligation for maintenance and operation of the Government-owned facilities were transferred to Northern Ordnance, Incorporated and thereafter Northern Pump Company, as such, was no longer engaged in the manufacturing business." Attachment to affidavit of Harrison Randolph, p. 3. The Corporate Controller of FMC, E. Joseph Willits, admitted that the manufacturing operations at the Fridley facility were conducted by Ordnance. Deposition of E. Willits, at 86. Moreover, Wigand stated that he did not know of, and had no information indicating that persons at Pump knew of, the disposal of hazardous waste. Deposition of E. Wigand at 120–122.

■ This evidence is sufficient to require FMC to present some evidence establishing the existence of the fact that Pump itself disposed of hazardous waste, or that Ordnance's disposal of hazardous waste can be legally imputed to Pump, in order to withstand this motion for summary judgment. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). FMC did not make the requisite showing.

FMC attempted to establish that Ordnance was Pump's agent as a matter of law. It established that Pump owned all the stock of Ordnance, that Pump and Ordnance shared common directors and some

common officers, that they both had corporate offices in the Fridley facility, and that Pump leased the facility and equipment to Ordnance. FMC contended that as principal, Pump knew of and participated in the disposal of hazardous waste as a matter of law.

■ The Court, as a matter of law, finds that the facts presented by FMC are insufficient to show the degree of control necessary to establish an agency relationship. The key to an agency relationship is the "element of *continuous subjection to the will of the principal....*" *Jurek v. Thompson,* 241 N.W.2d 788, 791, 308 Minn. 191, 199 (1976) (emphasis in the original) (quoting Restatement Agency, 2d § 1, Comment b). The facts presented by FMC do not show that Pump was involved in the management of Ordnance's day-to-day operations, or in its financial affairs. Indeed, Ordnance, which employed a total of 11,600 persons in 1944 and 3,450 persons in 1961, employed 41 persons as general management and office personnel in 1961, suggesting that Ordnance employees conducted the day-to-day affairs of Ordnance.

Even if an agency relationship were assumed, the facts presented by FMC are not sufficient to justify the inference that Ordnance's hazardous waste disposal activity should be imputed to Pump. There is no basis from which to infer that Pump authorized Ordnance to engage in an illegal activity, and there is no basis to infer that Pump authorized the disposal of TCE, later to be defined as hazardous. Ordnance was engaged in the design and manufacture of naval ordnance equipment, which has little to do with the disposal of wastes. It seems unlikely that the highest level of management, such as the officers common to Pump and Ordnance, would be concerned with the disposal of wastes, would know the content of such wastes, or would expressly authorize the disposal of TCE. The evidence before the Court, in fact, indicates that Pump did not authorize the disposal of TCE. Although, as FMC points out, some of Pump's officers knew Ordnance disposed of waste, deposition testimony indicates that they did not know such waste was composed, in part, of TCE. Deposition of E. Wigand at 120–122.

In sum, the Court concludes that no reasonable inference can be drawn from the facts presented to the Court that Pump engaged in the disposal of hazardous wastes.

### III.

■ Although Pump is potentially liable under provisions of CERCLA, because Pump is not accountable for Ordnance's disposal of hazardous wastes, and because Pump itself did not engage in any such disposal, Pump is not required to share FMC's costs of cleaning up the Fridley hazardous waste disposal site. The Court believes that this determination is entirely consistent with the policies of CERCLA. The government did, in fact, meet its obligation to effect a prompt response to the hazardous waste disposal problem at the Fridley site. Further, it did, and still does, have a cause of action under CERCLA against Pump. Further still, the incentive of a private party to enter into an administrative order by consent by which it agrees to clean up a hazardous waste disposal site is not diminished by this determination. A private party's right to bring an action for an apportionment of cleanup costs against other private parties responsible for the hazardous waste disposal remains unchanged. The Court's determination in this matter rests on the fact that Pump is not accountable for the hazardous waste disposal.

### IV.

In light of the above, there is no need to address the parties' other contentions.

Based on the foregoing, the arguments of counsel and the proceedings herein, and the entire record, IT IS HEREBY ORDERED that Pump's motion for summary judgment is granted.

IT IS FURTHER ORDERED that Ordnance's motion for summary judgment is denied.