**WATERVILLE INDUSTRIES, INC., Plaintiff,**

v.

**FIRST HARTFORD CORPORATION and Finance Authority of Maine, Defendants.**

Civ. No. 89–0209–B.

United States District Court, D. Maine.

Jan. 28, 1991.

Daniel E. Boxer, Daniel W. Emery, Pierce Atwood, Scribner Allen, Smith & Lancaster, Portland, Me., for plaintiff.

Michael T. Healy, Carl E. Kandutsch, Verrill & Dana, Augusta, Me., for First Hartford Corp.

Stephen A. Canders, Elizabeth Bordowitz, Augusta, Me., for Finance Authority.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

HORNBY, District Judge.

Waterville Industries, Inc. (Waterville) has sued First Hartford Corporation (First Hartford) and Finance Authority of Maine (FAME) to recover money damages under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, for expenses it has incurred responding to EPA orders concerning hazardous waste on its real estate in Waterville, Maine. First Hartford deposited the waste in lagoons when it owned the property. FAME held title after First Hartford and before Waterville. FAME has asserted a cross-claim against First Hartford for any amounts it must pay Waterville.

Here is the chronology. First Hartford operated the property as a textile mill for several years.[1] In the process, it deposited hazardous waste in lagoons on the real estate. First Hartford surrendered the real estate to a predecessor to FAME (who had provided financing) in 1980, but continued to operate the mill and deposit the hazardous waste until October of 1981. On February 20, 1981, First Hartford filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. From 1981 through 1983, First Hartford negotiated with the State Department of Environmental Protection (DEP) over the proper method of closing the lagoons. The DEP advised First Hartford that it was in violation of environmental regulations and that the matter would be referred to the Attorney General. On November 15, 1983 Waterville purchased the real estate from FAME at an auction without knowing of the environmental problems. First Hartford's Chapter 11 reorganization was confirmed on April 18, 1984 and a final decree of discharge was entered in 1987. First Hartford never notified Waterville of the environmental conditions. In 1987 the Environmental Protection Agency (EPA) commenced proceedings against Waterville under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6928(a), seeking a penalty and closing of the lagoons. Waterville and the EPA entered into a consent agreement in 1989. Thereafter, Waterville brought this lawsuit seeking to recover the resulting costs from First Hartford and FAME.

First Hartford seeks Summary Judgment against the claims of Waterville and the cross-claim of FAME. First Hartford argues that the confirmation of its plan under Chapter 11 of the Bankruptcy Code discharged any such claims or, alternatively, that a release executed by FAME prevents recovery by either Waterville or FAME. FAME seeks Partial Summary Judgment against First Hartford arguing that First Hartford is liable as a matter of law for any amounts FAME must pay Waterville. For the reasons that follow, I conclude that First Hartford's Motion for Summary Judgment against the cross-claim of FAME must be *GRANTED* and FAME's motion *DENIED;* and that First Hartford's Motion for Summary Judgment against the complaint of Waterville must be *DENIED*.

---

1. The actual title holding arrangements were more complicated because of financing requirements of FAME's predecessor, the Maine Guaranty Authority. Those intricacies, however, do not affect the issues at stake here.

First Hartford argues that the confirmation of its plan of reorganization in 1984 discharged all claims for environmental liability that might arise from pollution it caused on its real estate before confirmation. But First Hartford did not schedule any such claims in its petition in the bankruptcy court, *see* 11 U.S.C. § 521(1), or at any time thereafter before confirmation. Not surprisingly, therefore, notice of the pending reorganization did not go to any potential claimant for such damages either directly or by publication. First Hartford clearly knew of potential environmental claims by reason of its negotiations with the DEP from 1981 through 1983. It is true that at the time First Hartford filed its petition it had no reason to know that this particular plaintiff, Waterville Industries, Inc., would later purchase the Waterville real estate and thereby incur a cleanup cost obligation under the state and federal regulations passed pursuant to RCRA, *see* 42 U.S.C. §§ 6924 and 6925, and 40 C.F.R. § 265. But First Hartford knew that environmental agencies were pursuing the lagoon problem. As a result, it was on notice that successors in title to the Waterville real estate, such as Waterville and FAME, could ultimately be obliged to incur cleanup costs under RCRA, giving them a right to recovery against First Hartford. Thus, at the very least, First Hartford was aware of a contingent liability to successor titleholders for the environmental hazards it had created. It could, therefore, have listed this class of creditors as having contingent or unliquidated claims, *see, e.g., Grady v. A.H. Robins Co.,* 839 F.2d 198, 202–203 (4th Cir.1988); *United States v. Chateaugay Corp. (In re Chateaugay),* 112 B.R. 513,

520 (Bankr.S.D.N.Y.1990); *In re Production Plating,* 90 B.R. 277, 282 (Bankr.E.D. Mich.1988); *Roach v. Edge (In re Edge),* 60 B.R. 690, 704–705 (Bankr.M.D.Tenn.1986) and sought estimation of such claims. *See* 11 U.S.C. § 502(c).[2]

I conclude on this record (considered most favorably to Waterville and FAME, who are opposing the motion for summary judgment) that First Hartford knew of certain specific environmental claims and knew of a class of claimants—subsequent titleholders, of which FAME was the first—that it could have listed. Instead, it scheduled no such claims and as a result no notice was provided. It is true that the statutory language concerning discharge of a corporation that has gone through Chapter 11 proceedings is broad. Chapter 11 provides:

> (d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> (A) discharges the debtor from any debt that arose before the date of such confirmation, ... whether or not—
>
> (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
>
> (ii) such claim is allowed under section 502 of this title; ...

11 U.S.C. § 1141(d). But caselaw from the United States Supreme Court and this Circuit makes clear that *some* notice must go to an affected creditor. *See New York v. New York, New Haven & Hartford Railroad Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953); *In re Intaco Puerto Rico Inc.,* 494 F.2d 94, 99 (1st Cir. 1974); *In re Sullivan Ford Sales, Inc.,* 25

---

**2.** The definition of "claim" under the Code is very broad. Specifically, it includes: "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ...". 11 U.S.C. § 101(4)(A). Alternatively, if the claims did not accrue for Bankruptcy Code purposes until the response costs were actually incurred, *see Kilbarr Corp. v. General Services Administration (In re Remington Rand),* 836 F.2d 825, 833 n. 7 (3rd Cir.1988) (a claim arises when a party knows or should know of its right

to payment); *Schweitzer v. Consolidated Rail Corp.,* 758 F.2d 936, 943 (3rd Cir.1985), *cert. denied sub nom., Reading Co. v. Schweitzer,* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Avellino & Bienes v. M. Frenville Co. (In re Frenville),* 744 F.2d 332 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985); *Jensen v. Bank of America N.T. & S.A. (In re Jensen),* 114 B.R. 700, 705–706 (Bankr.E.D.Calif.1990), then the response costs did not arise until after confirmation, and are not discharged, *see id.*

**414**

B.R. 400, 402 (Bankr.D.Me.1982). *See also Brownell Industries, Inc. v. Water Design Logic Systems, Inc.,* 786 F.2d 401 (Fed.Cir. 1986); *Reliable Electric Co., Inc. v. Olson Construction Co.,* 726 F.2d 620 (10th Cir. 1984). First Hartford is therefore not entitled to summary judgment in this CERCLA action.

■ First Hartford also argues that the release it executed with FAME's statutory predecessor precludes recovery by FAME or Waterville; FAME conversely argues that First Hartford is liable as a matter of law. The release binds "each of the parties hereto" and then states at paragraph ten that it "shall be binding upon each party's respective legal representatives, successors or assigns...." FAME is the successor to the Maine Guaranty Authority, a party to the release, and therefore FAME is bound by the release. However Waterville is an independent party, not a party to the release, and not a legal representative, successor or assign of FAME or its predecessor, except in the sense that it has purchased from FAME the real estate that is the subject of the environmental hazard. The release purports to resolve all causes of action "arising out of, in connection with or relating to" this real estate, and First Hartford recorded the release in the Registry of Deeds for the county where the land is located, thereby arguably giving notice to subsequent purchasers. But nowhere does the release state that its obligation runs with the land. I do not find the release to be a covenant or burden that will run with the land. The promise does not touch or concern the land; it does not provide a benefit in the physical use or enjoyment of land, *see Restatement of Property* § 537 comment f (1944). *See also Friedlander v. Hiram Ricker & Sons,* 485 A.2d 965, 967 (Me.1984) (enforceability of a covenant intended to benefit land); *Day v. McEwen,* 385 A.2d 790, 793 (Me.1978) (enforceability of a covenant that touches and concerns the land). It is not part of an easement or conveyance such as in *Bistline v. United States,* 226 Ct.Cl. 282, 640 F.2d 1270 (1981), but a general release between two parties. First Hartford has provided no authority to suggest that mere filing in

the Registry of Deeds will convert a general release between a preceding and succeeding titleholder into an obligation that runs with title to the land or creates some right enforceable in equity against a subsequent titleholder. Accordingly, the release does not entitle First Hartford to summary judgment against Waterville's CERCLA claim.

■ With respect to liability as between FAME and First Hartford, I conclude that summary judgment should be denied to FAME and granted to First Hartford. Whatever law is applied in interpreting the release—Federal, New York or Maine, *see Mardan Corp. v. C.G.C. Music Ltd.,* 804 F.2d 1454, 1457 (9th Cir.1986) (Federal law governs releases of Federal claims, but state law should be incorporated to provide content to the Federal law); *Lyncott Corp. v. Chemical Waste Management Inc.,* 690 F.Supp. 1409, 1417 (E.D.Pa. 1988); *FMC v. Northern Pump Co.,* 668 F.Supp. 1285 (D.Minn.1987) (applying the law of the state of the performance of the release); *Southland Corp. v. Ashland Oil Inc.,* 696 F.Supp. 994, 1000 (D.N.J.1988) (applying the law of the state specified in the release)—the release executed by FAME is broad enough to preclude recovery by FAME for the environmental costs associated with this property. It discharges First Hartford

> from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty, or equity, which each party ever had, now have, or hereafter can, shall or may have ... for, upon, or by reason of any matter, cause or thing whatsoever arising out of, in connection with, or relating to the [Waterville] Real Property....

This document is clearly a release of causes of action relating to the real estate—not an indemnification, hold harmless or similar agreement such as is prohibited in some circumstances by CERCLA, 42 U.S.C.

§ 9607(e).[3] The language compromises all liabilities that might ever arise between First Hartford and FAME arising out of the real property; FAME has not demonstrated that only discrete non-environmental issues were resolved. *See Mardan* at 1462 (New York law). I therefore conclude as a matter of law that First Hartford is not liable for contribution to FAME.

Accordingly, First Hartford Corporation's Motion for Summary Judgment against the cross-claim of FAME is GRANTED, but in all other respect is DENIED. FAME's motion for summary judgment is DENIED.

Currently pending before the Court are motions by the lawyers for First Hartford Corporation and Waterville Industries, Inc., to withdraw, no substitute appearances having been entered. When the Clerk's office schedules these motions for hearing, the lawyers shall promptly notify their clients in writing of the hearing date; of the law in this Circuit, *see American Metals Service Export Co. v. Ahrens Aircraft Inc.*, 666 F.2d 718, 719 n. 2 (1st Cir.1981), that a corporation is not permitted to either bring or defend an action without a lawyer; and of their clients' right to be present and be heard on the Motions to Withdraw. The lawyers shall provide written confirmation to the Court that they have provided this notice.

SO ORDERED.

---

**3.** *See Mardan, Lyncott, Southland,* and *FMC, supra* (holding that private parties may contract to transfer financial responsibilities under CERCLA). *But see AM International, Inc. v. International Forging Equipment,* 743 F.Supp. 525, 530 (N.D.Ohio 1990) (holding that releases between tortfeasors to avoid liability under CERCLA are not valid).