**INTERSTATE POWER COMPANY, a Delaware corporation, Plaintiff,**

v.

**KANSAS CITY POWER & LIGHT COMPANY, a Missouri corporation, Defendant and Third–Party Plaintiff,**

v.

**IOWA–ILLINOIS GAS & ELECTRIC COMPANY and Bob McKiness Excavating & Grading, Inc., Third–Party Defendants.**

No. C89–3033.

United States District Court, N.D. Iowa, Central Division.

Oct. 1, 1991.

1226

Kent M. Ragsdale, Dubuque, IA, Clement F. Springer, Jr., Ronald W. Teeple, John L. Leonard, Defrees & Fiske, Chicago, IL, for Interstate Power Company.

Mark L. Zaiger, Shuttleworth & Ingersoll, Cedar Rapids, IA, Jerome T. Wolf, Terry W. Schackmann, Barry L. Pickens, Spencer Fane Britt & Browne, Kansas City, MO, Mark G. English, Kansas City Power & Light, Kansas City, MO, for Kansas City Power and Light Co.

Stephen D. Hardy, Grefe & Sidney, Des Moines, IA, David C. Duncan, Stephen D. Hardy, Iris J. Post, Grefe & Sidney, Des Moines, IA, for Bob McKiness Excavating & Grading, Inc.

Thomas J. Shields, Lane Waterman, Davenport, IA, Cathy S. Woollums, Iowa–Illinois Gas & Electric Co., Davenport, IA, Robert M. Olian, Pamela R. Hanebutt, Arlene Haas, Sidley & Austin, Chicago, IL, for Iowa Illinois Gas and Electric Co.

Anne L. Clark, Philip H. Dorff, Jr., Hopkins Huebner, Des Moines, IA, for City of Mason City, Iowa.

Craig A. Kelinson, Asst. Atty. Gen., Des Moines, IA, for Iowa Department of Natural Resources.

### ORDER

HANSEN, District Judge.

This matter is before the court on defendant's resisted motion for summary judgment on Counts I through X of plaintiff's complaint, filed February 21, 1990, and resisted motion to dismiss Counts III through VII, IX, and X of that complaint, filed April 23, 1990. The court acknowledges defendant's supplemental memorandum in support of its summary judgment motion, filed February 27, 1991, and plaintiff's response, filed March 12, 1991. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b).

This case arises out of the sale of real property in Mason City, Cerro Gordo County, Iowa, to plaintiff Interstate Power Company (IPC) by defendant Kansas City Power & Light Company (KCPL) in 1957. Plaintiff is primarily engaged in the business of generating, transmitting, and selling electric energy and selling natural gas. Complaint, filed May 12, 1989, at 1. Defendant is engaged in the business of generating, transmitting, and selling electricity. Id.

Defendant purchased the Mason City site in 1932 from Peoples' Gas & Electric Company (Peoples), which, from 1906 to 1932, had operated a coal and water gas manufacturing plant at the site. Id. at 2–3. In 1932, as part of an "intra-holding company restructuring and reshuffling," defendant acquired Peoples' assets, including the Mason City site and the gas manufacturing plant. Id. at 3. As part of this arrangement, defendant accepted and assumed all of Peoples' liabilities, and Peoples continued to manage the Mason City site as defendant's agent pursuant to an agency agreement. Id. at 3–4. In 1950, the

agency agreement was terminated, and defendant continued to operate the site until the 1957 sale to plaintiff. *Id.* at 4.

Plaintiff claims that during the period of time that defendant and Peoples owned and operated the Mason City site and plant, residues from the plant were generated and deposited on and into the ground at the site. *Id.* at 6–7. These residues were in the form of coal tar and water gas tar, both of which are oily, sticky substances. *Id.* at 7. Plaintiff claims that these residues may have been deposited by defendant and Peoples or have reached the adjacent Willow Creek by way of contaminated alluvial groundwater. *Id.*

The gas manufacturing plant at Mason City was demolished in 1952. During or after the demolition, plaintiff alleges that defendant buried "deep into the ground" all of the coal tar and water gas tar located at the site, removing it from view. *Id.* Plaintiff claims that when it purchased the site in 1957, the tar residues were hidden from view and that defendant never advised plaintiff that there were such tar residues present beneath the surface. *Id.* at 7–8.

Plaintiff claims that it first became aware of the presence of the residues in 1984 when the city of Mason City uncovered deposits of tar beneath the ground when it was installing a sewer line. *Id.* at 8. Plaintiff notified the State of Iowa and the Environmental Protection Agency (EPA), which conducted extensive testing at the site. *Id.* Large amounts of buried coal gas tar and water gas tar were found. *Id.*

Pursuant to the strict liability provisions of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended, 42 U.S.C. § 9601 *et. seq.*, a consent order imposing one-hundred percent of the clean-up and monitoring costs on plaintiff was entered into between plaintiff and the EPA on June 3, 1986. *Id.* at 8–9 (citing exhibit A, consent order). As a result of this consent order, plaintiff alleges that it has and will incur substantial costs. *Id.* at 9–10.

Plaintiff claims that defendant is responsible for all or part of the total cost of implementing the consent order, charging the defendant with responsibility for the existence of hazardous substances on the site and possibly on adjacent properties and waterways. Plaintiff seeks the following relief:

> *Count I*—reimbursement from defendant for all of the consent order costs charged to and incurred or to be incurred by plaintiff pursuant to 42 U.S.C. § 9607(a);
>
> *Count II*—declaratory judgment and contribution · pursuant to 42 U.S.C. § 9613(f)(1);
>
> *Count III*—declaratory judgment and liability pursuant to the Superfund Amendments and Reauthorization Act (SARA), 42 U.S.C. § 9601(35)(C);
>
> *Count IV*—common-law liability for indemnity for abatement of nuisance;
>
> *Count V*—common-law liability for contribution for abatement of nuisance;
>
> *Count VI*—common-law liability for indemnity;
>
> *Count VII*—common-law liability for contribution and;
>
> *Count VIII*—declaratory judgment on the indemnity agreement.

On April 16, 1990, plaintiff amended its complaint to assert the following two additional causes of action:

> *Count IX*—strict liability under CERCLA; and
>
> *Count X*—common-law strict liability.

Although these last two claims were raised after defendant filed its motion for summary judgment on February 21, 1990, the court believes that the scope of defendant's motion encompasses the latter-raised claims as well and will include these claims in its analysis. *See also* plaintiff's brief in response to defendant's motion for summary judgment, filed April 12, 1990, at 38–43 (addressing Counts IX and X).[1]

---

1. The court notes that on February 27, 1991, plaintiff amended its complaint for the second time to add Counts XI through XV against third-party defendant Iowa–Illinois Gas & Electric Company. These additional claims are not relevant to either of defendant KCPL's pending motions and will not be considered by the court in its present analysis.

### I. Motion for summary judgment

Defendant moves for summary judgment on all of plaintiff's claims directed at KCPL, alleging that an indemnification agreement signed by the parties when plaintiff purchased the property is sufficient as a matter of law, under both CERCLA and Iowa law, to bar plaintiff's action.

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). Once the movant has properly supported its motion, the non-movant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmovant "may not simply rest on the hope of discrediting the movant's evidence at trial." *Matter of Citizens Loan & Sav. Co.,* 621 F.2d 911, 913 (8th Cir.1980). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which [it] will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky,* 828 F.2d 461, 462 (8th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert. denied,* 484 U.S. 1014, 108 S.Ct. 718, 98 L.Ed.2d 668 (1988).

Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman,* 827 F.2d 346, 350 (8th Cir.1987).

The indemnification agreement contained within the 1957 contract to sell KCPL's business and physical properties to IPC provides:

(c) Covenants: The Buyer [IPC] covenants and agrees with the Seller [KCPL] that the Buyer will take possession and control of the Iowa Properties at 5:00 p.m., Central Standard Time, on the Closing Date and that from and after such time the Buyer will assume and will indemnify the Seller against all liabilities and obligations of every kind and character whatsoever arising subsequent to the closing date as pertain to the business and operations of the Iowa Properties, including obligations and liabilities arising subsequent to the Closing Date on account of contracts and other commitments made by the Seller in the ordinary course of business prior to the Closing Date, except any liability arising out of certain litigation now pending in the United States Court of Appeals for the Eighth Circuit, entitled *First Iowa Hydro Electric Cooperative, et al., v. Iowa–Illinois Gas and Electric Company, et al.,* Civil Nos. 15548 and 15549.

Defendant's exhibit A, filed with statement of undisputed facts in support of motion for summary judgment, at 13.

Defendant asserts that this court can determine solely from the above-quoted language that all of the claims asserted in this lawsuit are within the scope of the indemnity agreement. It claims that the interpretation of the indemnification clause is a matter of law for the court, which need not resort to rules of construction where the intent of the parties is expressed in clear and unambiguous language. Specifically, defendant claims that the language "all liabilities of every kind and character whatsoever" clearly includes plaintiff's claims of the defendant's negligence and wrongdoing. *See* defendant's brief in support of motion for summary judgment, filed February 21, 1990, at 7. It also claims that the language "obligations and liabilities arising subsequent to the Closing Date" bars plaintiff's common-law as well as CERCLA claims, which it alleges could not exist prior to the 1957 sale. *Id.* at 13. Consequently, the issue before the court is

whether the indemnification agreement clearly and unequivocally manifests an intent to indemnify defendant against common-law tort and CERCLA liability. The court will first address plaintiff's state common law claims.

▮ Contract interpretation, the process of determining the meaning of words used, is a matter of law for the court, unless it depends upon "extrinsic evidence or a choice among reasonable inferences to be drawn from it." *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 107–08 (Iowa 1981). Defendant has submitted extrinsic evidence bearing on the absence of an express exception for torts in the agreement. In support of its claim that the parties knew how to exclude particular liabilities and decided not to do so, defendant submits a February 4, 1957 preliminary draft of the agreement which, along with other changes, included the following language added at the end:

> Buyer [plaintiff] will assume and will indemnify the Seller [defendant] against all liabilities and obligations ... except ... (ii) any liability for torts occurring in the operation of the Iowa properties prior to the Closing Date, other than claims which by separate agreement of the parties may be assumed by the Buyer upon payment by the Seller of a reasonable reserve therefor.

Defendant's exhibit C at 12–13 (underscoring designates added language). Defendant claims that the later exclusion of this language from the final indemnification agreement indicates that the parties intended to include indemnification for tort liability in the final indemnification agreement.

On the other hand, plaintiff presents evidence to support the opposite interpretation of the deletion. It claims that the addition of the following underscored language, not included in the preliminary draft, to the final agreement demonstrates that the inclusion of the language ultimately excluded would have been superfluous:

> [F]rom and after such time [the closing date] the Buyer [plaintiff] will assume and will indemnify the Seller [defendant] against all liabilities and obligations of every kind and character whatsoever arising subsequent to the Closing Date as pertain to the business and operations of the Iowa properties, including obligations and liabilities arising subsequent to the Closing Date on account of contracts and other commitments made by the Seller in the ordinary course of business prior to the Closing Date. ...

Plaintiff's brief at 10; *compare* defendant's exhibit A at 13 *with* defendant's exhibit C at 12–13. In support of this contention, plaintiff submits, among other items, a June 17, 1957 letter from KCPL acknowledging its liability for "unsettled claims for damages." *See* plaintiff's exhibit 17.

▮ When neither party relies upon extrinsic evidence concerning the meaning of the relevant contract language, the process of interpreting the meaning of the words used is a matter for the court to decide as a matter of law. *Cairns v. Grinnell Mut. Re-insurance Co.*, 398 N.W.2d 821, 823–24 (Iowa 1987); *Sandbulte*, 302 N.W.2d at 108. However, here both parties have submitted extrinsic evidence to support their claimed respective reasonable interpretations of the agreement. In view of the cited extrinsic evidence, the court finds that the agreement does not clearly and unequivocally manifest an intent to indemnify defendant for defendant's pre-sale common-law tort liability. *Cf. AM Int'l, Inc. v. International Forging Equip.*, 743 F.Supp. 525, 530 (N.D.Ohio 1990) (where court found no question of ambiguity or mistake, indemnity agreement held to bar claims under state law). A genuine issue of fact therefore remains as to which party's interpretation is the proper one. Defendant's summary judgment motion on plaintiff's common-law claims will therefore be denied.

▮ Defendant also claims that plaintiff's CERCLA claims are barred by the indemnification agreement. It asserts that no cause of action can arise under CERCLA before its 1980 enactment date, and hence the phrase "arising subsequent to the Closing Date" would necessarily include the CERCLA claims. Plaintiff asserts that the indemnity agreement does not reach causes of action

arising subsequent to 1957 which are based on defendant's pre–1957 conduct and that the agreement does not clearly and unambiguously relieve defendant of liability for its disposal of hazardous material. In its response to defendant's supplemental memorandum plaintiff also urges the court to follow the lead set by the Ohio district court in *AM International* and find that indemnity agreements between two parties otherwise liable for response costs under CERCLA are not permitted under 42 U.S.C. § 9607(e).

The court first notes that the Eighth Circuit has held that CERCLA § 302(a), 42 U.S.C. § 9652(a), is "merely a standard 'effective date' provision that indicates the date when an action can first be brought and when the time begins to run for issuing regulations and doing other future acts mandated by the statute." *United States v. Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d 726, 732 (8th Cir.1986) (quoting *United States v. Shell Oil Co.,* 605 F.Supp. 1064, 1075 (D.Colo.1985)), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). The appellate court found the CERCLA statutory scheme to be "overwhelmingly remedial and retroactive," referring to actions and conditions in the past tense. *Id.* at 733 (citing 42 U.S.C. § 9607). It cited to the Act's legislative history to support its conclusion that "[i]n order to be effective, CERCLA must reach past conduct." *Id.* (citing to H.R.Rep. No. 1016, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 6119, 6125) (purpose of CERCLA is "to initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites").

Assuming therefore that CERCLA imposes liability for acts committed prior to its enactment, *see, e.g., United States v. Monsanto Co.,* 858 F.2d 160, 173–75 (4th Cir. 1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989), the effect of such retroactivity is that a cause of action may arise after CERCLA's enactment, based on pre-enactment conduct. *Levin Metals Corp. v. Parr–Richmond Terminal Co.,* 817 F.2d 1448, 1450–51 (9th Cir.1987). Consequently, since CERCLA was enacted after the parties entered into the indemnification agreement and assuming that such agreements are permitted by statute, plaintiff's cause of action based upon CERCLA necessarily arose after that agreement and could be barred by its application.

In *Southland Corp. v. Ashland Oil, Inc.,* 696 F.Supp. 994, 1002 (D.N.J.1988), the court analyzed whether an indemnification agreement entered into by the parties prior to the enactment of CERCLA could cover claims subsequently brought under CERCLA. While the court noted that a contract can act to preclude recovery under CERCLA, it determined that "there must be an express provision which allocates these risks to one of the parties." *Id.* The court stated that in order for CERCLA claims to be precluded under an indemnification agreement, there must be some clear transfer or release of future "CERCLA-like" liabilities. *Id.* (citing *FMC Corp. v. Northern Pump Co.,* 668 F.Supp. 1285, 1292 (D.Minn.1987)). The court then concluded that the agreement at issue in *Southland,* as opposed to the agreement in *Northern Pump,*[2] completely lacked any language expressly releasing Ashland from future liabilities based on its hazardous waste disposal practices or imposing this liability on Southland and held that the indemnification agreement did not reach the CERCLA claims. *Id.*

The need for clear and unambiguous language to effect a transfer of CERCLA liability finds support in the recent cases cited by defendant in its supplemental memorandum. In *Mobay Corp. v. Allied–Signal, Inc.,* 753 F.Supp. 1248, 1260 (D.N.J.1991), the court stated:

> This Court finds it appropriate, in light of the legislative history and policy goals of CERCLA, to require that in order to preclude recovery of response costs, there must be a clear provision which allocates these risks to one of the parties. The

---

**2.** In *Northern Pump,* the defendant agreed to indemnify FMC for "all liabilities ... now or hereafter arising, ... out of events occurring on or before December 30, 1963." 668 F.Supp. at 1291.

Court cannot expect parties executing a contract prior to CERCLA to have foreseen the statute. However, in order for the Court to interpret a contract as transferring CERCLA liability, the agreement must at least mention that one party is assuming environmental-type liabilities.

The court cited to *Southland* for the proposition that "[w]hile a contract can, under appropriate circumstances, act to preclude recovery of response costs, there must be an express provision which allocates these risks to one of the parties." *Id.* at 1259 (citing *Southland*, 696 F.Supp. at 1002). However, in a subsequent footnote, the court noted that it would also consider a "broadly-worded clause, waiving all liabilities of *any* type whatsoever" as a waiver of CERCLA liability. *Id.* at 1260 n. 15. Consequently, it appears that CERCLA liability can be waived by either the mention of "environmental-type" liability in a release agreement or by the use of broad language. *See, e.g., Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1461–62 (9th Cir.1986) (finding that the release language "based upon, arising out of or in any way relating to the Purchase Agreement" clearly included potential clean-up costs); *Jones–Hamilton Co. v. Kop–Coat, Inc.*, 750 F.Supp. 1022, 1028–29 (N.D.Cal. 1990) (agreement clearly providing for indemnification for "all losses, damages and costs" resulting from any violation of the law found to bar plaintiff's CERCLA action against defendant); *Rodenbeck v. Marathon Petroleum Co.*, 742 F.Supp. 1448, 1456 (N.D.Ind.1990) ("While a contract can, under appropriate circumstances, act to preclude recovery of response costs, there must be a provision in the contract which allocates risks of this nature to one of the parties.").

The court notes that in *Mardan, Jones–Hamilton* and *Rodenbeck*, the courts found that the broad language releasing a party from liability was unambiguous. *Mardan*, 804 F.2d at 1461; *Jones–Hamilton*, 750 F.Supp. at 1028–29; *Rodenbeck*, 742 F.Supp. at 1457 (finding that clause releasing party "from all claims and obligations of any character or nature whatsoever ..." to be clear manifestation of intent to release from future causes of action including CERCLA). In *Mardan*, the Ninth Circuit stated:

Given the breadth of the Settlement Agreement, absolving [seller] from liability for any claims "in any way connected with" the Purchase Agreement, and noting that "the parties are desirous of settling ... any other issues between them," and given the absence of any extrinsic evidence that the parties intended a more limited release, we cannot accept [buyer's] argument that potential CERCLA claims were not included within the meaning of the Settlement Agreement and the Release.

804 F.2d at 1462 n. 8.

Despite its broad language ("all liabilities and obligations of every kind and character"), the court believes that the indemnification agreement at issue in this case does not clearly and unambiguously absolve defendant from future liabilities based on its hazardous waste disposal practices. In so doing, the court notes that this indemnification agreement differs from the agreements construed by the courts in *Northern Pump, Jones–Hamilton*, and *Rodenbeck* or discussed in *Mobay*. The court cannot presently conclude that the indemnification agreement is sufficient as a matter of law to bar plaintiff's action under CERCLA. Consequently, summary judgment on plaintiff's CERCLA claims is also inappropriate at this time.

The court is aware of the recent detailed decision from the Ohio district court holding that indemnity agreements between two otherwise liable parties are barred by application of 42 U.S.C. § 9607(e)(1). *See AM Int'l*, 743 F.Supp. at 529. Section 9607(e)(1) provides:

(1) No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

The court attempted to reconcile these two seemingly contradictory sentences by exam-

ining the legislative history, in particular the discussions of Senators Cannon and Randolph. *AM Int'l,* 743 F.Supp. at 528–29 (quoting 126 CONG.REC. 30,984 (1980)). The court concluded that

> Congress intended [§ 9607(e)(1)] to prevent the parties from contractually relieving themselves of liability under the act, whether that liability is enforced by action of the government or in a suit by a person who performed the clean-up and sues others for contribution under the act. In addition, by the second sentence, Congress intended to permit any person to contract with others *not already liable under the act* to provide additional liability by way of insurance or indemnity.

*Id.* at 529 (emphasis added).[3] In so holding, the court recognized that other courts "with minimal discussion" have found explicit support for the apportionment of CERCLA liability by contract in § 9607(e)(1). *Id.* However, it noted that its restrictive interpretation would further the statute's goals of both encouraging environmental clean-up and equitably apportioning costs by responsible parties.

This holding and rationale were specifically adopted by a Michigan district court in the recent decision, *CPC International, Inc. v. Aerojet–General Corp.,* 759 F.Supp. 1269 (W.D.Mich.1991) and cited with favor in *Jones–Hamilton,* 750 F.Supp. at 1026–27, and *Hudson Insurance Co. v. American Electric Corp.,* 748 F.Supp. 837, 842 n. 5 (M.D.Fla.1990). While recognizing the persuasive appeal of this interpretation of § 9607(e)(1), the court acknowledges that it is contrary to most published decisions. *See, e.g., Central Ill. Pub. Serv. Co. v. Industrial Oil Tank & Cleaning Serv.,* 730 F.Supp. 1498, 1507 (W.D.Mo.1990)[4]. However, since the court believes that the indemnification

agreement does not unambiguously include potential CERCLA liability, it does not need to decide today which interpretation of the statutory provision it would follow.

## II. Motion to dismiss

On April 23, 1990, defendant moved to dismiss Counts III through VII, IX, and X of the complaint, alleging that plaintiff has failed to state claims upon which relief can be granted.[5] Plaintiff resists this motion on both procedural and substantive grounds.

The court agrees with plaintiff that with the exception of the arguments directed against Counts IX and X, all of the matters set forth in defendant's motion to dismiss could have been raised in its motion for summary judgment, that the motion was filed long after defendant filed its answer, and that it refers to matters outside of the complaint. It will, however, reach the substantive arguments in defendant's motion.

While a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) cannot technically be filed after an answer has been submitted, *see* rule 12(b), rule 12(h)(2) provides that "[a] defense of failure to state a claim upon which relief can be granted" may be made in a motion for judgment on the pleadings under rule 12(c). Consequently, this court will treat defendant's motion as a motion for judgment on the pleadings and will not consider any matters outside of the pleadings. *See Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) (motion to dismiss filed after answer asserting failure to state a claim treated as a motion for judgment on the pleadings).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) should not be granted unless the movant clearly establishes that no material

---

3. Defendant does not contest that as a previous owner, it is potentially liable under CERCLA.

4. Without discussion, the *Central Illinois* court resolved the apparent inconsistency in the statutory language by finding that a "liable party remains liable (e g., to the United States) regardless of whether it has an indemnity agreement, but the liable party still may proceed against a third party (e.g., an insurance company) which has agreed to indemnify the liable party." 730

F.Supp. at 1507. This distinction, based upon whether a party is liable to the government or to a private party, has been followed by most courts. *See generally AM Int'l,* 743 F.Supp. at 529–30.

5. The court does not address the merits of Counts I, II, and VIII, which are not the subjects of defendant's motion. These Counts will not be dismissed.

issue of fact remains to be resolved and that movant is entitled to judgment as a matter of law. *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters and Butcher Workmen of North Am.*, 627 F.2d 853, 855 (8th Cir.1980). The court must construe all well-pleaded factual allegations of the nonmoving party as true and draw all reasonable inferences from those facts in favor of the nonmovant. *Quality Mercury, Inc. v. Ford Motor Co.*, 542 F.2d 466, 468 (8th Cir.1976), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977).

## A. Count III

■ Plaintiff alleges a cause of action under § 101(35)(C) of the Superfund Amendments and Reauthorization Act (SARA), 42 U.S.C. § 9601(35)(C), seeking both a declaratory judgment and an award of costs. This section provides:

> Nothing in this paragraph or in section 9607(b)(3) of this title shall diminish the liability of any previous owner or operator of such facility who would otherwise be liable under this chapter. Notwithstanding this paragraph, if the defendant obtained actual knowledge of the release or threatened release of a hazardous substance at such facility when the defendant owned the real property and then subsequently transferred ownership of the property to another person without disclosing such knowledge, such defendant shall be treated as liable under section 9607(a)(1) of this title and no defense under section 9607(b)(3) of this title shall be available to such defendant.

42 U.S.C. § 9601(35)(C). Plaintiff claims that defendant's knowledge of the existence of hazardous substances on the property and its failure to so inform plaintiff prior to the sale brings defendant within the reach of this section. Defendant claims that § 9601(35)(C) does not provide an affirmative cause of action based solely upon an allegation of knowledge on the part of a prior owner.

■ In order to determine the validity of plaintiff's claim made pursuant to § 9601(35)(C), it is necessary to examine several of CERCLA's statutory provisions to-

gether. Section 9607(a) delineates the four categories of persons who are liable for costs under CERCLA. Section 9607(a)(1) covers the present owner of the property. *Ecodyne Corp. v. Shah*, 718 F.Supp. 1454, 1457 (N.D.Cal.1989). Section 9607(a)(2) primarily covers prior owners "who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" and is consequently more limited in scope than § 9607(a)(1). *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2d Cir. 1985); *Ecodyne*, 718 F.Supp. at 1457. Section 9607(b)(3) provides a defense to persons liable under § 9607(a) who can prove that the release or threat of release of a hazardous substance was caused by a third party and that the potentially liable person exercised due care and took precautions against foreseeable acts or omissions by any such third party. Section 9601(35)(C) provides that if a defendant obtained actual knowledge of the release or threatened release of a hazardous substance when it owned the property and subsequently transferred ownership of that property to another person, as is alleged in plaintiff's complaint, then the defendant shall be treated as liable under § 9607(a)(1), and no defense under § 9607(b)(3) will be available to it. This section, which is included in the definitional section of the statute, by the underscored portion, appears merely to take away a defense from a prior owner. It is not a font of independent liability. Plaintiff has already alleged a cause of action pursuant to § 9607(a) in Count I of its complaint. The relief to which § 9601(35)(C) appears to entitle plaintiff is the removal of a potential defense available to defendant (that set forth in § 9607(b)(3)), if it can prove that defendant had actual knowledge of the release or threatened release of hazardous substances and did not disclose that knowledge to plaintiff. Consequently, the court believes that should plaintiff provide the requisite proof, it would only be entitled to declaratory relief that defendant cannot avail itself of a § 9607(b)(3) defense. Any liability under § 9601(35)(C) appears to rest upon proof of liability under § 9607(a). The court will therefore dismiss Count III of plaintiff's complaint.

## B. Counts IV—VII

In Counts IV and V of its complaint, plaintiff claims that defendant's alleged disposal practices created a public nuisance, for which it seeks indemnification (Count IV) and contribution (Count V) for the costs of abatement. In Counts VI and VII, plaintiff seeks indemnification (Count VI) and contribution (Count VII) for the costs of cleaning up the hazardous substances. It alleges that it is a completely innocent party in that it purchased the property without knowledge of the existence of the nuisance or the presence of the hazardous substances.

Defendant moves to dismiss Counts IV and VI on the grounds that they are based upon a theory of recovery which is no longer recognized in Iowa and moves to dismiss Counts V and VII on statute of limitations grounds. It also claims that plaintiff lacks standing to assert any claims based upon the alleged existence of a public nuisance.

### 1. Indemnification

Defendant claims that plaintiff's claims for indemnity in both Count IV and VI are expressly based upon the theory of active and passive negligence, which the Supreme Court of Iowa has determined is no longer a viable theory of recovery in light of the adoption of the Iowa Comparative Fault Act, Iowa Code chapter 668, and the Supreme Court of Iowa's decision in *American Trust & Sav. Bank v. U.S.F. & G.*, 439 N.W.2d 188, 190 (Iowa 1989). Plaintiff, however, denies that those counts are based upon that now-defunct theory, claiming that it is a "completely innocent party," and not a passively negligent party. Instead, it claims that its recovery can be based either upon the theory of vicarious liability or breach of duty.

The Iowa court has recognized a right of indemnification, absent a contract, "[w]here the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged" or "[w]here the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged." *C.F. Sales, Inc., v. Amfert, Inc.*, 344 N.W.2d 543, 553 (Iowa 1983); *accord Iowa Elec. Light & Power v. General Elec. Co.*, 352 N.W.2d 231, 236 (Iowa 1984).

The court agrees with defendant that plaintiff cannot make out a claim based upon vicarious liability. Plaintiff's liability in this case arises from the statute and the fact of its ownership of land containing hazardous substances. Defendant's liability as a prior owner arises under the statute from its alleged acts of placing the substances in the ground. Plaintiff's liability is not vicarious, that is it does not follow from or arise out of any existing legal relationship between plaintiff and defendant. Rather, it arises out of its ownership of the real property itself.

The same is not true of plaintiff's demand for indemnification based upon an alleged breach of a duty to disclose the condition of the property at the time of the sale. In *Graham v. United States*, 441 F.Supp. 741, 743 (N.D.Texas 1977), the court stated:

> It is the legacy of the common law that in contracts for the sale of land the doctrine of caveat emptor has been applied. Two exceptions to the caveat emptor doctrine have evolved. The first concerns undisclosed dangerous conditions known to the vendor. The second concerns implied warranties imposed in some jurisdictions on a builder-vendor for a newly constructed house.

(footnotes omitted). Only the first exception is relevant here.

In *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 312 (3d Cir.1985), the court said:

> The Reporter's Note to Restatement (Second) of Torts § 352 (1965) sums up the prevailing view regarding the liability of a vendor of land:

>> Under the ancient doctrine of caveat emptor, the original rule was that, in the absence of express agreement, the vendor of land was not liable to his vendee, or a fortiori to any other person, for the condition of the land existing at the time of transfer. As to sales of land this rule has retained much of its original force, and the implied warranties which have grown up around the sale of chattels never have developed. This is perhaps because great importance always has

been attached to the deed of conveyance, which is taken to represent the full agreement of the parties, and to exclude all other terms and liabilities. The vendee is required to make his own inspection of the premises, and the vendor is not responsible to him for their defective condition, existing at the time of transfer.

*See also* M. Friedman, *Contracts and Conveyances of Real Property* § 1.2(n), at 37 (4th ed. 1984) ("[I]n the sale of realty this doctrine [caveat emptor] not only applies, it flourishes.").

The Restatement reporter also noted that "[T]o this rule an exception has developed as to undisclosed dangerous conditions known to the vendor, as to which see § 353."

Iowa, like many other states, has abrogated the doctrine of caveat emptor in cases involving the construction of homes by builder-vendors and replaced it with a doctrine of implied warranty, *Kirk v. Ridgway*, 373 N.W.2d 491, 496 (Iowa 1985), but neither side has cited the court to any Iowa case which has otherwise limited the "ancient rule of caveat emptor" in real estate transactions. Reporter's Notes to Restatement (Second) of Torts § 352. *But see Syester v. Banta*, 257 Iowa 613, 133 N.W.2d 666, 668 (1965) (In a case for fraud in the selling of $29,000 worth of Arthur Murray dance lessons to an elderly lonely widow, the Iowa court did opine that "[t]he old doctrine of caveat emptor is no longer the pole star for business.") Iowa has adopted the definition of caveat emptor from Black's Law Dictionary as meaning that "the purchaser of an article must examine, judge, and test it for himself, being bound to discover any *obvious* defects." *Swanson v. Baldwin*, 249 Iowa 19, 85 N.W.2d 576 (1957) (emphasis added).

In *Stalter by Stalter v. Iowa Resources, Inc.*, 468 N.W.2d 796, 798 (Iowa 1991), the Supreme Court of Iowa said:

> We have previously stated that when the owner of a premises disposes of that premises the owner is no longer liable for injuries to persons upon the property because the former owner is in no position to control the use of the premises. *Upp v. Darner*, 150 Iowa 403, 407, 130 N.W. 409, 410

(1911). The former owner's duties to persons upon the land are at an end. *Id.* These principles are in accord with Restatement (Second) of Torts section 352 (1965) which provides:

> Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time the vendee took possession.

In *Stalter*, the Iowa court expressly declined to decide whether the exceptions contained in § 353 (i.e., continuing liability on the vendor to the vendee for concealing or failing to disclose to the vendee a known condition involving an unreasonable risk to persons on the land) are available in Iowa.

In *Westwood Pharmaceuticals v. National Fuel Gas Distribution Corp.*, 737 F.Supp. 1272, 1282–83 (W.D.N.Y.1990), the New York court refused to apply this exception to the doctrine of caveat emptor when the vendor and vendee of the property were both sophisticated commercial enterprises. The court quoted the following language from another New York case:

> The owner of land ceases to be liable in negligence for its dangerous condition when the ownership of the premises or possession and control pass to another before the injury is sustained. *Even where a continuing trespass or nuisance exists,* liability of the owner terminates after the conveyance at such time as the new owner has had a reasonable opportunity to discover the condition by making prompt inspection and necessary repairs.

*Id.* (quoting *New York Tel. Co. v. Mobil Oil Corp.*, 99 A.D.2d 185, 473 N.Y.S.2d 172, 174 (1984)). In *Starks v. Albemarle County*, 716 F.Supp. 934, 937 (W.D.Va.1989), the court applied the doctrine of caveat emptor to bar the claim of purchasers against a real estate developer for his failure to reveal the flood-prone nature of the plot prior to its sale. In so doing, the court noted that the purchasers did not allege that the developer did anything to divert them from making inquiries or from inspecting the premises. *Id.; see*

*also Philadelphia Elec. Co. v. Hercules, Inc.,* 762 F.2d 303, 313 (3d Cir.) ("[W]here, as here, corporations of roughly equal resources contract for the sale of an industrial property, and *especially where the dispute is over a condition on the land rather than a structure, caveat emptor remains the rule.*") (emphasis added), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985). Here, however, the court cannot say at this juncture, given the allegations of burial of the toxic substances by the defendant alleged in the pleadings, that the condition of the land complained of was so obvious at the time of its transfer to the plaintiff that defendant can invoke the doctrine of caveat emptor. Accordingly, defendant's motion to dismiss Counts IV and VI on this theory should be denied.

### 2. Contribution

■ Defendant claims that Counts V and VII for contribution are time-barred by application of Iowa Code § 668.6(3), which provides:

(3) If a judgment has been rendered, an action for contribution must be commenced within one year after the judgment becomes final. If a judgment has not been rendered, a claim for contribution is enforceable only upon satisfaction of one of the following sets of conditions:

(a) The person bringing the action for contribution must have discharged the liability of the person from whom contribution is sought by payment made within the period of the statute of limitations applicable to the claimant's right of action and must have commenced the action for contribution within one year after the date of that payment.

(b) The person seeking contribution must have agreed while the action of the claimant was pending to discharge the liability of the person from whom contribution is sought and within one year after the date of the agreement must have discharged that liability and commenced the action for contribution.

Consequently, the court must first determine whether the consent order entered into by plaintiff and the EPA is a final judgment within the meaning of § 668.6(3).

In *United States v. Homestake Mining Co.,* 595 F.2d 421, 425 (8th Cir.1979), the Eighth Circuit stated that "[a] consent decree is a judicial act and 'possesses the same force and character as a judgment rendered following a contested trial.'" *Id.* at 425 (quoting *Siebring v. Hansen,* 346 F.2d 474, 477 (8th Cir.), *cert. denied,* 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965)). In *Homestake,* the EPA and Homestake entered into a consent decree which provided a timetable for compliance with certain federal regulations. *Id.* at 423. The decree, together with the complaint brought by the United States to enforce certain provisions of the Clean Water Act, was filed with the district court. *Id.* The court signed the consent decree. *Id.* Homestake later moved pursuant to Federal Rule of Civil Procedure 60(b), seeking relief from the consent decree. *Id.* It was in this context that the court determined that the consent decree, signed by the district court, had the same force and character as a final judgment. *See also Siebring,* 346 F.2d at 477 (consent decree, entered into by parties and approved by the court, has same "force and character" as judgment).

■ The consent order entered into by plaintiff and EPA has not been approved by any court. In Iowa, a judgment is rendered "when it is announced, or when the judge signs an enrolled judgment order, but there is no competent evidence of such rendition until the entry is made on the court record." *World Teacher Seminar v. Iowa Dist. Court,* 406 N.W.2d 173, 177 (Iowa 1987) (citing *Moreno v. Vietor,* 261 Iowa 806, 156 N.W.2d 305, 307 (Iowa 1968)). The court has played no role in the generation or approval of this consent decree. Until the court approves such a decree, it is simply a contract between the parties. *Cf. World Teacher,* 406 N.W.2d at 176 (judgment by consent is contract of record approved by the court). Consequently, the consent order entered into by plaintiff and the EPA on June 3, 1986, did not trigger the running of the one-year statute of limitations set forth in § 668.6(3).

If a judgment has not been rendered pursuant to § 668.6(3), then plaintiff's claim for

contribution must satisfy the conditions set forth in §§ 668.6(3)(a) or (b). According to § 668.6(3)(b), plaintiff "must have agreed while the action of the claimant [the EPA] was pending to discharge the liability of the person from whom contribution is sought [defendant]." Contrary to defendant's assertion, plaintiff has not agreed to discharge defendant's liability by its consent order with the EPA. Nowhere in that consent order does plaintiff specifically identify defendant as a tortfeasor whose liability has been discharged. Consequently, defendant's liability has not been discharged pursuant to § 668.6(3)(b). *Cf. Britt–Tech Corp. v. American Magnetics Corp.*, 463 N.W.2d 26, 30 (Iowa 1990) ("[W]e favor a rule which would require a written release to include some specific identification of the tortfeasors to be released in order for them to be discharged.") (quoting *Aid Ins. Co. v. Davis County*, 426 N.W.2d 631, 633 (Iowa 1988)); *see also Iowa Nat'l Mut. Ins. Co. v. Granneman*, 438 N.W.2d 840, 842–43 (Iowa 1989) (date of agreement to discharge liability of named third party commences one-year limitations period pursuant to § 668.6(3)(b)).

To satisfy the conditions outlined in § 668.6(3)(a), plaintiff "must have discharged the liability of the person [defendant] from whom contribution is sought by payment made within the period of the statute of limitations applicable to the claimant's [EPA's] right of action and must have commenced the action for contribution within one year after the date of that payment." Plaintiff contends that since there is no statute of limitations applicable to the EPA's right of action against it for the cleanup costs, plaintiff can bring its contribution action at any time as long as that action is commenced within one year after the date of payment.

The court believes that the crucial question is whether plaintiff's partial payment of the costs incurred by the cleanup discharged defendant's liability and started the one-year limitations period. There are no cases construing § 668.6(3)(a) which guide this court's analysis.

The court finds that plaintiff cannot discharge defendant's liability until it has paid for the cleanup process pursuant to the consent order entered into by the EPA and itself. Plaintiff is still in the process of incurring costs pursuant to the consent order. Where the total costs have yet to be paid, it is impossible for plaintiff to discharge defendant's liability. *Cf. Britt–Tech*, 463 N.W.2d at 30 (Carter, J., concurring) ("I also believe that liability may be 'extinguished' for purposes of section 668.5(2) [provision establishing right of contribution] without any release if all conceivable damages have been paid in full."); *Iowa State Commerce Comm'n v. IGF Ins. Co.*, 309 N.W.2d 445, 449 (Iowa 1981) (affirming trial court's ruling that party is discharged from obligation on bond upon full payment of proceeds). Consequently, the court finds that the statute of limitations period has not yet started to run on plaintiff's cause of action based upon contribution, as plaintiff has not yet met the conditions set forth in § 668.6(3)(a) which would trigger its commencement. The court therefore finds that plaintiff's cause of action based upon contribution for costs incurred or yet to be incurred cannot be dismissed pursuant to § 668.6(3).

### 3. Standing

▮▮▮▮ Defendant also attacks plaintiff's claims under Counts IV and V on the grounds that plaintiff lacks standing to assert a claim of public nuisance. In order for a private party to assert a claim of public nuisance, it must prove that it has been injured in a special manner different from the public generally. *Williamson v. Kelley*, 271 N.W.2d 727, 729 (Iowa 1978) (citing *Channel 10, Inc. v. Independent School Dist. No. 709*, 298 Minn. 306, 312, 215 N.W.2d 814, 820 (1974)) ("Rights of a public nature are to be enforced by public authority rather than by individual citizens...."); *Reynolds v. Dittmer*, 312 N.W.2d 75, 77 (Iowa App.1981). The court finds that if plaintiff can establish, as it claims, that it has and will incur costs pursuant to the consent decree with the EPA, those costs will be sufficient to meet this criterion for bringing a public-nuisance action. *See Westwood Pharmaceuticals*, 737 F.Supp. at 1281 (citing *Philadelphia Elec.*, 762 F.2d at 316):

### C. Count IX

■ Defendant claims that Count IX of plaintiff's amended complaint, which asserts a cause of action for strict liability under CERCLA, sets forth no basis upon which plaintiff is entitled to relief and merely repeats the claims made in Counts I and II. Plaintiff claims that Count IX states that defendant is strictly liable to plaintiff under CERCLA, irrespective of its strict liability under CERCLA, and is therefore different from Counts I and II.

The court agrees with defendant that CERCLA creates liability on the part of prior owners in two sections, 42 U.S.C. §§ 9607(a), 9613(f). The provisions of § 9607(a) have been discussed previously, and § 9613(f) permits a party to seek contribution from another party "who is liable or potentially liable under § 9607(a)." There is no separate provision creating liability on the part of a prior owner based upon strict liability. Consequently, Count IX cannot stand and must be dismissed.

### D. Count X

■ Defendant claims that Count X of plaintiff's complaint fails to allege a basis on which to hold it strictly liable under the common law, in that plaintiff has not identified any activity, either by defendant or Peoples, that is abnormally dangerous.

The Restatement (Second) of Torts §§ 519, 520 (1977), sets forth the theory upon which strict liability is based. Section 519(1) provides:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

Section 520 of the Restatement lists the factors to be considered in determining whether an activity is abnormally dangerous. These include the following: the existence of a high degree of risk of harm to others; a likelihood that the harm that results from the activity will be great; an inability to eliminate the risk by the exercise of reasonable care; the extent to which the activity is a matter of common usage; the inappropriateness of the activity to the place where it is carried on, and the extent to which the value to the community is outweighed by its dangerous attributes. Restatement (Second) of Torts § 520. These standards have been applied by the Iowa court in determining whether an activity is abnormally dangerous. *See, e.g., Maguire v. Pabst Brewing Co.,* 387 N.W.2d 565, 568–69 (Iowa 1986); *see also United States v. Aceto Agricultural Chems. Corp.,* 872 F.2d 1373, 1379 (8th Cir.1989) (citing district court's finding that disposal of hazardous substances could be considered abnormally dangerous activity under Iowa common law).

Defendant claims that plaintiff has not identified any activity undertaken by defendant or its predecessor-in-interest which is abnormally dangerous. In ruling on a motion for judgment on the pleadings, this court must draw all reasonable inferences from the factual allegations in the complaint in favor of the nonmoving party. The court believes that the alleged deposit of hazardous substances such as the tar residues present at the Mason City site can be construed to be an abnormally dangerous activity within the meaning of the Restatement and Iowa law. Consequently, Count X will not be dismissed.

### *ORDER:*

Accordingly, It Is Ordered:

1. Defendant's motion for summary judgment, filed February 21, 1990, is denied.

2. Defendant's motion to dismiss Counts III through VII, IX, and X, filed April 23, 1990, is granted in part and denied in part. Counts III and IX are dismissed. Counts IV, V, VI, VII, and X are not dismissed.

Done and Ordered.